ISRAEL vs. SILSBEE.

*February 24 — March 13, 1883.*

*(1, 2) Settlement of guardian's account, after death of ward: when administration necessary.  (3) Case stated: setting aside former order by county court: laches: estoppel.  (4) Husband and wife. (5) Will construed.*

1. Upon the sale by a guardian, under license of a county court, of lands which the ward had inherited from his mother — upon whose estate there had been no administration — it is not competent for the court, in the same proceeding, to adjust a claim of the purchaser at the sale, as a general creditor of the estate of the ward's mother, or to order such claim to be paid from the proceeds of the sale.

2. Whether the accounts of a guardian can be adjusted by the county court after the ward's death in a proceeding to which the guardian and the heir of the ward are the only parties, without administration of the ward's estate, is not determined, but the court inclines to the opinion that they cannot.

3. In 1874 the guardian of I., under license of the county court, sold lands which I. had inherited from his mother, to S., who had formerly been the guardian of the mother. At the time of confirming the sale, the court, in the same proceeding, adjusted a claim of S. against the mother *(held* not to pertain to her guardianship), and directed that the guardian's deed be executed to S. upon payment of the difference between the purchase price and the amount of the claim. In 1881, about four months after attaining majority, I. petitioned the court to set aside so much of its former orders as adjusted the claim of S., and to require S. to complete the purchase of the land by paying into court the balance of the purchase

money.  Pending this proceeding, I. received from his guardian the amount paid by S. on the sale.  *Held:*

(1) I. was not guilty of such laches in commencing such proceeding as would bar his rights therein.

(2) The acceptance of the amount paid on the sale did not estop I. from maintaining the proceedings to enforce payment of the balance of the purchase price.

(3) The order adjusting the claim of S. was without jurisdiction and void.

4. The husband alone is responsible for the board of his wife and minor child, unless the wife expressly made the same chargeable upon her separate estate.

5. A will stated the wish of the testator that his wife "should have the care, custody and education of [his] children until they shall severally arrive of age, and so long as she shall clothe, educate and support them without charge to them," and gave to her "for that purpose and on that condition" the use of all his estate.  The wife having accepted the guardianship of the children, it is *held* that she did so upon the condition that she clothe, educate and support them during their minority without charge.

APPEAL from the Circuit Court for *Dane* County.

In 1851 Nicholas Smith died testate in the city of Madison, leaving surviving him his widow, who is the present appellant, and their six children, to whom he devised certain real estate in Madison, of which he died seized.  Eliza Jane Smith was their oldest child, and at the time of her father's death was about eleven years of age.  In 1858 Eliza Jane intermarried with one Benedict Israel.  The plaintiff, *Maximillian D. Israel*, who was born in 1859, is their son, and the only issue of such marriage.  In 1862 Mrs. Israel, with her son, joined Mr. Israel in California (to which state he had preceded them), and during the following year she died intestate.  *Maximillian* has ever since resided in that state.  At the decease of Mrs. Israel, her interest in her father's estate, which descended to her son, was seven fifty-fourths thereof.  Of that interest one ninth of her father's estate was devised to her by his will, and the remaining one fifty-fourth part thereof descended to her upon the death of one

of her brothers, after he became twenty-one years of age, who died intestate, leaving no issue or widow. Under various proceedings in the county court all of the real estate devised by Nicholas Smith was sold, except lot 3, in block 103, in Madison, and on this lot *Mrs. Silsbee* erected three stores in 1856. These stores seem to have been paid for mainly out of the proceeds of sales of real estate and personal property, and the rents of such stores. In 1871 *Mrs. Silsbee* sold lot 3 for $12,000, and the whole consideration was paid to her — a portion at the time of the sale and the balance afterwards. She also received all of the rent for the stores until such sale. All of the surviving children of Nicholas Smith and herself had then become of age, and all of them, except her son Byron, joined with her in a conveyance of lot 3 to Byron, who thereupon conveyed the same to such purchaser. The respondent, *Maximillian*, was then a minor, and did not join in such conveyance.

For the purpose of realizing an unpaid balance of the purchase money, it became necessary that a conveyance of the interest of the respondent in the property should be obtained. On the basis of $12,000, that interest was of the value of $1,555.55. Whereupon, in 1873, *Mrs. Silsbee* petitioned the county court for the appointment of a guardian for her grandson, and for a sale of his interest in lot 3; also that out of the proceeds of the sale she might be paid the amount of an alleged indebtedness of Mrs. Israel to her. Upon such petition a guardian was appointed for the respondent, who duly qualified as such. The guardian at once petitioned the same court for a license to sell such interest, and for the adjustment of the claim of *Mrs. Silsbee* against the estate of Mrs. Israel. License was granted accordingly, and pursuant thereto the guardian sold the interest of his ward in lot 3 to *Mrs. Silsbee* for $1,555.55 — that being the appraised value thereof — and the court confirmed the sale. The court also adjusted the claim of *Mrs. Silsbee* against her daughter's

estate at $1,180, and only required her to pay over to the guardian the balance of the purchase money after deducting that amount therefrom. The sum (including interest) which she paid the guardian pursuant to this order was $506.98.

After the respondent became of age he petitioned the same county court to set aside so much of its former orders as adjusted the claim of *Mrs. Silsbee* against his mother's estate, and directed its payment out of the proceeds of such sale; and to require *Mrs. Silsbee* to complete her purchase by paying into court for the respondent the balance of such purchase money, with interest. The county court denied the prayer of the petition, and the respondent appealed to the circuit court from the order denying the same.

Pending these proceedings, the respondent received from the guardian the money paid to him by *Mrs. Silsbee*, with the interest thereon, and released him from all further liability on account of such guardianship. After a trial, in which the facts above stated were proved, the circuit court reversed the order of the county court refusing to grant the relief prayed, and decided and adjudged that the orders of the county court adjusting the claim of *Mrs. Silsbee* against the estate of her deceased daughter, and directing that the sum found due her be paid out of the proceeds of the sale of *Maximillian's* interest in lot 3, be set aside, canceled, and held for naught; and that *Mrs. Silsbee* be required to complete her purchase at the guardian's sale by paying into the county court the amount of the purchase money retained by her, with interest thereon from January 17, 1874. The judgment requires her to pay the same within thirty days after the date thereof, "for the said *Maximillian D. Israel*, the petitioner herein, without prejudice to any right she may have to establish by proper proceedings any claim she may have against the estate of said Eliza Jane Israel, deceased."

From the judgment of the circuit court *Mrs. Silsbee* appeals to this court.

The record is very voluminous. Much testimony was given concerning the alleged claim of *Mrs. Silsbee* against the estate of her daughter, Mrs. Israel, and of the transactions of *Mrs. Silsbee* in respect to the estate of her deceased husband, Nicholas Smith. The records of the county court pertaining to that estate, involving the transactions and accounts of two successive administrators, were also read in evidence. It is deemed unnecessary to set out this testimony here. It is believed that the foregoing statement of facts is sufficient to a correct understanding of the questions determined by the court.

For the appellant there was a brief by *Sloan, Stevens & Morris*, and oral argument by *Mr. Sloan*. They contended, among other things, that the county court had full jurisdiction to settle the account of *Mrs. Silsbee* as guardian of her daughter by bringing in the respondent in this case as the legal representative of his mother. R. S. 1858, ch. 112, sec. 8, subd. 4. The term "legal representatives," as used in that chapter, includes heirs. *Warnecke v. Lembca*, 71 Ill., 91; *Hogan v. Page*, 2 Wall., 605; *Galloway v. Finley*, 12 Pet., 264; *Lee v. Dill*, 39 Barb., 516. To the point that by his acceptance, after he became of age, of the amount adjudged to him by the county court, the respondent is estopped from denying the validity of the judgment finally determining his interest in the land sold, they cited: *Ruckman v. Alwood*, 44 Ill., 183; *Deford v. Mercer*, 24 Iowa, 119; *Pursley v. Hays*, 17 id., 310; *Karber v. Nellis*, 22 Wis., 215; *Emmons v. Milwaukee*, 32 id., 443; *Dodge v. Burns*, 6 id., 514; *Pierce v. O'Keefe*, 11 id., 180; *Sholes v. State*, 2 Pin., 499; *Calkins v. State*, 13 Wis., 389; *Massing v. State*, 14 id., 502; *U. S. v. Adams*, 7 Wall., 463; *Kellogg v. U. S.*, id., 361; *Oneale v. Thornton*, 6 Cranch, 53; *Morris v. Stewart*, 14 Ind., 334;

Israel vs. Silsbee.

*Mohr v. Tulip,* 40 Wis., 66; *Bennett v. Van Syckel,* 18 N. Y., 481; *Mattoon v. Cowing,* 13 Gray, 387.

*John M. Olin,* for the respondent, to the point that the probate courts possess plenary powers in all matters within their jurisdiction and may, *at any time,* in furtherance of justice, correct or revoke orders which have been irregularly made or procured by fraud, cited: *Brook v. Chappell,* 34 Wis., 405; *Tryon v. Farnsworth,* 30 id., 577; *Brunson v. Burnett,* 2 Pin., 185; *In re Fisher,* 15 Wis., 512; *Betts v. Shotton,* 27 id., 667; *Archer v. Meadows,* 33 id., 166; *Johnson v. Johnson,* 40 Ala., 247; *Heirs of Smith v. Rix,* 9 Vt., 240; *Adams v. Adams,* 21 id., 162; *French v. Winsor,* 24 id., 402; *Vreedenburg v. Calf,* 9 Paige, 128; *Brigg's Appeal,* 5 Watts, 91; *Beach v. Norton,* 9 Conn., 182.

Lyon, J. It is admitted, in behalf of *Mrs. Silsbee,* that her grandson, *Maximillian D. Israel,* the respondent, was the owner of an undivided seven fifty-fourths part of lot 3, in block 103, in the city of Madison; that she acquired the title to that interest by her purchase thereof at the guardian's sale; that the consideration which she agreed to pay therefor was $1,555.55; and that she paid to the guardian on account of her purchase, including interest, but $506.98. The balance of the purchase money — $1,180 — she retains to satisfy her demands against the estate of Mrs. Israel, pursuant to the orders of the county court. It is admitted, in behalf of the respondent, that the guardian's sale was regular and valid, and that his interest in lot 3 passed to *Mrs. Silsbee* by the guardian's deed thereof to her. But the respondent claims that the orders of the county court, by virtue of which she retains more than two thirds of the purchase money, are invalid, and he has instituted this proceeding to vacate and set aside such orders, to the end that he may recover the unpaid balance in her hands. It would seem, therefore, that the proceedings in the administration and settlement of the

estate of Nicholas Smith are not material to the determination of this appeal. The vital question is, Was it competent for the county court, in the guardianship proceedings, to adjust the claim of *Mrs. Silsbee* against the estate of her deceased daughter, and order the same paid out of the proceeds of the sale of respondent's land?

Before proceeding to the consideration of this question, it will be convenient to dispose of two preliminary propositions maintained by counsel for *Mrs. Silsbee.* These are (1) that the respondent has been guilty of such laches in commencing this proceeding as to bar his right to assail the orders of the county court for the payment of *Mrs. Silsbee* out of the proceeds of the sale; and (2) that by accepting the money paid to the guardian pursuant to such orders, he has estopped himself from attacking the orders. As to the first proposition, it is sufficient to say that the respondent commenced this proceeding within a reasonable time after he became of age, and that the county court may at any time, in furtherance of justice, revoke an order which has been irregularly made. *In re Fisher*, 15 Wis., 511. This rule, subject to certain qualifications, has been frequently asserted by this court. This case is not within such qualifications. *Betts v. Shotten*, 27 Wis., 667; *Archer v. Meadows*, 33 Wis., 166, (see opinion by DIXON, C. J., p. 172). We conclude that the respondent did not lose his right to the relief prayed by delay. The other proposition is negatived by the case of *Mohr v. Tulip*, 40 Wis., 66. It may be that by receiving from the guardian the proceeds of the sale in his hands, the respondent estopped himself to question the validity of the sale. That is not determined. But admitting the sale to be valid, the money belonged to him in any event. He but received his own. It would be a strange application of the doctrine of estoppel to hold that unless he left the money, which was indisputably his, in the hands of his guardian until he established his right to the balance of the pur-

chase money, he would lose his right to recover such balance.

The above propositions being negatived, the question first above stated (which will now be considered) becomes the controlling question in the case. · Counsel for *Mrs. Silsbee* seek to uphold the jurisdiction of the county court to make the order in question, by maintaining that she was the guardian of her daughter, Mrs. Israel, and that the court has jurisdiction to state accounts between guardian and ward. And they maintain, further, that the court may exercise the same power after the death of Mrs. Israel, in the guardianship proceedings to which her son and heir at law is a party, although there has been no administration of her estate. It does not appear that *Mrs. Silsbee* ever gave bond as guardian of her daughter. If she was the guardian of Mrs. Israel, it was by virtue of the following clause in the will of her late husband: "It is my wish that my wife should have the care, custody, and education of my children until they shall severally arrive of age, and so long as she shall clothe, educate, and support them without charge to them. I do hereby will and bequeath, to my said wife, *Ruth Smith*, for that purpose and on that condition, the use, rents, issues, and profits of all my estate, of whatever nature, after the payment of my debts and the bequest to my mother aforesaid." In her petition to the county court for a settlement and adjustment of her accounts, she styles herself the testamentary guardian of the heirs of Nicholas Smith.

If *Mrs. Silsbee* was not the guardian of Mrs. Israel, or, being such guardian, if her claim against the estate of Mrs. Israel does not pertain to guardianship matters, it is not claimed that the county court had any jurisdiction to order her claim paid out of the proceeds of the sale. If she is only a general creditor of the estate of Mrs. Israel, she must pursue the remedies prescribed by statute to enforce pay-

ment of her claim.    If she proceeds in the county court, her first and indispensable step must be to procure the appointment of an administrator of Mrs. Israel's estate.

It becomes important, therefore, to determine the nature of her claim, and what are her relations in respect to it towards the estate of her deceased daughter.    We gather from the testimony that the claim of *Mrs. Silsbee*, allowed by the county court, consists of the following items: $200 advanced to her in 1862 when she was starting for California; $200 sent to her in 1863, which reached California after her death; and $780 for the board of herself and the respondent (who was then an infant) for three years.    The last item accrued between 1859 and 1862, during which time Mr. Israel was absent from his family.

Mrs. Israel became of age in 1861; hence a large portion of this claim accrued after she became of age.    That portion had no relation whatever to guardianship transactions.    It arose out of transactions between parties, each of whom was *sui juris*, and in respect to it only the ordinary relation of creditor and debtor exists.    Very clearly the county court had no jurisdiction to include that portion of *Mrs. Silsbee's* claim in any adjudication it might make concerning the alleged guardianship.

As to the balance of the claim — that portion which accrued before Mrs. Israel became of age — there are two difficulties in the way of its allowance, either of which we think insuperable:    (1) The claim accrued after the marriage of Mrs. Israel, and her husband alone is liable for the board of herself and child, unless she expressly made the amount chargeable upon her separate estate.    We find no evidence tending to prove that she did so.    (2) By a fair construction of the will of her late husband, *Mrs. Silsbee* accepted the guardianship of their children on condition that she should clothe, educate, and support them during their minority

without charge to them. As guardian, therefore, she can enforce no claim against the estate of Mrs. Israel for the expense of her maintenance during minority.

We thus reach the conclusion that, at most, *Mrs. Silsbee* is only a general creditor of the estate of Mrs. Israel, and can only enforce payment of her claim in the county court through the process of administration upon the estate of the latter. On the authority of *McGonigal v. Colter*, 32 Wis., 614, probably *Mrs. Silsbee* could maintain an action at law against the respondent, as sole heir of Mrs. Israel, on proof of the facts required by the statute (R. S., 839, sec. 3277), without first administering her estate. We do not think, however, *Mrs. Silsbee* is driven to such an action to obtain payment of her claim. The judgment of the circuit court, by fair and almost necessary implication, treats the balance of the proceeds of the sale retained by her as part of the estate of her deceased daughter, so far as the creditors of that estate are concerned. We perceive no valid objection to this. If *Mrs. Silsbee* can establish her claim in the county court against the estate — she being the only creditor, and the proceeds of the sale constituting the whole estate — it is just and equitable that her claim be paid out of such proceeds without further litigation. Due notice of the administration proceedings in the county court will be given as required by law, and the respondent will have full opportunity to contest the claim. For the security of *Mrs. Silsbee*, the county court should retain the money which she is required to pay into court for such reasonable time as will enable her to establish her claim (if she can) against the estate of Mrs. Israel, and whatever sum she recovers should be paid therefrom.

The time limited by the judgment for the payment into court of the balance of the purchase money having long since expired, the circuit court, in its mandate to the county court, should appoint some future day for such payment.

Under the circumstances of the case, we advise the circuit court to grant a liberal time to *Mrs. Silsbee* in which to make such payment. The views above expressed dispose of the case without reaching the question whether the original orders of the county court in the guardianship proceedings would have been valid had the relation of guardian and ward existed between *Mrs. Silsbee* and her daughter, Mrs. Israel, and had the claim of *Mrs. Silsbee* arisen out of transactions pertaining to such guardianship. The general question is, Can the accounts of a guardian be adjusted by the county court after the decease of the ward, in a proceeding to which the guardian and the heir of the ward are the only parties, without any administration of the estate of the deceased ward? This question will not be here determined or discussed; yet we deem it proper to say that we have given the question some consideration, and, as at present advised, we all incline to the opinion that it must be answered in the negative.

Before closing this opinion we desire to acknowledge our obligations to the learned counsel of the respective parties for their very able and interesting arguments, which have been of great service to us in the investigation of the case.

*By the Court.*— Judgment affirmed.