GUARDIANSHIP OF REEVE.

*January 14—April 11, 1922.*

*Wills: Fraud on residuary legatees: Settlement with alleged issue of intervening legatee: Cancellation on discovery of fraud: Laches: Limitation of actions: Probate courts: Control of judgments and records: Relief cognizable solely in equity: Guardian and ward: Jurisdiction of court: Fraud of heirs as affecting inheritance.*

1. Residuary legatees were not barred by laches from seeking a cancellation of proceedings in which they had made a settlement with a child claimed by the surviving widow of testator's son to be his issue, on her subsequent confession that such child was not the son's issue, though the residuary legatees had suspected fraud, where the evidence was insufficient to warrant any reasonable expectation of success in establishing fraud.

2. Such residuary legatees were not barred by the statute of limitations where the fraud perpetrated was not discovered until one year prior to the commencement of the action, even

though they had previously suspected the fraud. This action, being to clear the records of the probate court, is one in which relief could be sought only in chancery, and under sub. (7), sec. 4222, Stats., does not accrue until discovery of the fraud.

3. On discovery by the county court that the child whom the surviving wife had fraudulently claimed to be the issue of her deceased husband, and for whom the court had appointed a guardian, was not in fact the husband's child, it was proper for the court to cancel proceedings in which the guardian had received a certain sum for releasing the child's claim as the issue of the husband to certain property, and to order the guardian to refund the amount so received to the persons who paid it.

4. The duty and power of the county court, so far as it affects the property of a deceased person, is not impaired by mere lapse of time, so long at least as title to real property, under the special statutes regulating that subject, is not questioned or rights of innocent purchasers of real or personal property affected.

5. A decree of the probate court may be subsequently annulled when clearly shown to be without foundation in law or in fact, the jurisdiction to grant such relief being primarily in such probate court rather than in a court of general equity powers.

6. The actual existence of a ward is a required jurisdictional fact to make valid an order in guardianship proceedings in county court under sec. 3962, Stats.

7. The county court, on discovering that a surviving wife had perpetrated a fraud in passing off as the issue of her deceased husband a baby not in fact the husband's child, for whom the court had appointed a guardian, will order funds in the hands of the guardian, acquired by the ward as heir at law of the husband, to be given to the surviving wife as sole heir of the husband, notwithstanding the wife had perpetrated such fraud, since the guardianship proceedings are void for want of a ward, making it necessary for the court to dispose of the funds in the hands of the guardian to the persons entitled thereto, and since the surviving wife, as sole heir of the husband, is the only person entitled thereto.

OWEN and ROSENBERRY, JJ., dissent.

APPEAL from a judgment of the county court of Winnebago county: FRED BEGLINGER, Judge.    *Affirmed on appeal*

*of Charles H. Forward, guardian ad litem; reversed on that of Amelia E. Anderson.*

In 1891 one Thomas T. Reeve, resident of Oshkosh, died leaving three adult children. In November, 1892, his will was duly probated. It provided among other things that a certain piece of real estate in the city of Oshkosh and designated herein as 161 Main street should be held in trust for the benefit of his widow during her lifetime (she dying in April, 1905); upon her death a similar trust during the life of his son George K. Reeve; upon the death of the son leaving issue him surviving, then outright to such issue; in default of such issue to his residuary legatees, his two daughters.

In 1893 the said George K. Reeve married one Amelia E. Johnson. A child was born to them in 1897 which died in 1898.

On January 17, 1902, George K. Reeve died intestate leaving only a piece of real estate described as No. 17 Main street in said city of Oshkosh.

On February 1, 1902, his widow, *Amelia E. Reeve,* made petition for administration of his estate, reciting that he left him surviving as the only heirs his widow and one son named *Lucas T. Reeve,* then about four months of age. In March letters of administration were granted to Mr. John Harrington.

In June, 1906, *Amelia E. Reeve* petitioned the county court of Winnebago county for the appointment of a guardian for *Lucas T. Reeve,* alleged to be then of the age of four years and eight months, and on the 21st of June *George B. Simmons* was appointed and qualified as guardian.

On August 14, 1906, a final decree was entered in the estate of George K. Reeve. The personal property, being rents from the real property amounting to about $280, was assigned one third thereof to the widow, *Amelia E. Reeve,* as her dower interest, the balance to *George B. Simmons*

as general guardian of said *Lucas T. Reeve*.  The real estate, namely, No. 17 Main street, was assigned to the said *Lucas T. Reeve* as minor heir of the deceased, subject to the unassigned dower rights of the said *Amelia E. Reeve*.

In 1907 Caroline E. Fraker, one of the daughters of Thomas T. Reeve, died leaving as her sole heir *Mary R. Fraker*.

In February, 1908, the daughter, *Mary E. Miller*, and the granddaughter, *Mary R. Fraker*, of Thomas T. Reeve commenced an action in the circuit court for Winnebago county against *Amelia E. Reeve, Lucas T. Reeve*, and others to quiet plaintiffs' title to No. 161 Main street, devised by the will of Thomas T. Reeve, asserting that they had taken possession of said 161 Main street upon the death of the widow of Thomas T. Reeve and collected the rents therefrom, and also asserting that the said *Amelia E. Reeve* had fraudulently pretended and represented that there was in fact a son born to her and the said George K. Reeve, in the petitions for administration of the estate of George K. Reeve and the guardianship of said *Lucas T. Reeve* as above recited, and alleging that as a matter of fact there was no such child and for that reason there had been no vesting of the title to said 161 Main street, upon the death of the widow of Thomas T. Reeve, in any other than said plaintiffs.

It appears that service of such complaint and summons, together with a subpœna and notice of the proposed examination of said *Amelia E. Reeve*, was made upon her in the city of Oshkosh.  She at that time was a nonresident of Wisconsin and had been such for most of the time since the death of George K. Reeve.  The proposed examination appears to have been continued from time to time, but she never was examined in said proceedings and nothing further seems to have been done therein.

Negotiations were had between the interested parties and then application was made by *Amelia E. Reeve* to the county court for a sale of the interest of *Lucas T. Reeve* in said

161 Main street, reciting among other things that she still claims that *Lucas T. Reeve* is the issue of said George K. Reeve and his sole heir, that she has no desire to litigate the facts in regard thereto, and is not willing to appear or give evidence in the action instituted on February 28, 1908, recited above.    The guardian made a similar application, and by agreement between the parties concerned a sale of the interest of the alleged *Lucas T. Reeve* as heir was then made to the said *Mary E. Miller* and *Mary R. Fraker* for. $4,000, and $500 paid by them in addition thereto, to the said guardian, as a settlement for all claims and demands on behalf of said alleged infant for the rents and income received by the said *Mary E. Miller* and *Mary R. Fraker* during their possession of said premises after the death of the widow of Thomas T. Reeve.    Such proceedings were confirmed in the county court in April, 1908.

Pursuant to applications, allowances were made from time to time by the county court out of the funds in the hands of the guardian of sums to *Amelia E. Reeve* as and for the support, care, and maintenance of said *Lucas T. Reeve,* such payments continuing until the year 1916, at which time there had been so paid to her $1,950.

In January, 1914, the property No. 17 Main street, left by George K. Reeve, was sold upon proceedings not in any way questioned here so far as the title to the real estate is concerned, by *Mr. Simmons* as guardian for $7,000, out of which sum *Amelia E. Reeve* was awarded $1,272, which was accepted by her as and for her dower interest in said property, and the balance thereof remained in the possession of the said guardian.

Some time in 1918, after a consultation by *Mrs. Reeve,* who in the meantime had married one Frank P. Anderson, with Mr. Louis Reuscher, an attorney at law of Cincinnati, Ohio, it was disclosed to the persons interested that *Amelia E. Reeve,* now *Anderson,* now asserts that there had been no such child as *Lucas T. Reeve* born to her and the said

George K. Reeve, and that the infant which she had brought to Oshkosh and presented to *Mr. Simmons* at the time of the petition for and the appointment of him as guardian of the alleged *Lucas T. Reeve* in 1906 was, as a matter of fact, one Marshall Beamon, the son of one William Beamon and Laura Beamon, his wife, and whom the said *Amelia E. Reeve* at the time had procured from an asylum in Chicago where such child had been left by his parents.

Upon learning this, and in December, 1919, *Mary E. Miller* and *Mary R. Fraker* petitioned the court below to have the proceedings of 1908 upon which they had paid the $4,500 to *Mr. Simmons* as guardian for a release of all claims of the alleged *Lucas T. Reeve* to 161 Main street, to which, but for the claim of the existence of *Lucas T. Reeve* as issue of George K. Reeve, they would have absolute title, canceled and held as naught, thereby relieving their title to such property from any cloud thereon by reason of the assertion of the existence of such alleged issue of George K. Reeve, and also for a refund of the $4,500 so paid by them, together with accrued interest thereon, basing their claim for relief upon the facts disclosed from the admissions of *Mrs. Anderson* of the fraud that she had perpetrated in falsely asserting the existence of issue of George K. Reeve. The guardian appeared in opposition to such petition, put the petitioners to their proofs as to the facts alleged, and asserted that any claim by them for such refund was barred by the statute of limitations and also on the ground that the petitioners are estopped from so and now asserting such claims. *Charles H. Forward,* who had been appointed guardian *ad litem* for the alleged minor, *Lucas T. Reeve,* also appeared and took a similar position.

*Amelia E. Anderson,* formerly *Reeve,* appeared and by verified pleading admitted that there was no issue of George K. Reeve surviving him and that she had used the child, Marshall Beamon, for the purpose of representing him to be such alleged issue under the name of *Lucas T. Reeve.*

She asked that the final decree and order of distribution made on August 14, 1906, whereby the residue of said estate of George K. Reeve was assigned to the said *Lucas T. Reeve,* be modified, and that the balance of the money in the hands of *George B. Simmons* as guardian, after the repayment to *Mary E. Miller* and *Mary R. Fraker* of the amount to be allowed them, should be paid over to her as sole heir at law of the said George K. Reeve, deceased.

To this prayer for relief on behalf of *Amelia E. Anderson* the guardian *ad litem, Charles H. Forward,* asserted that the same was barred by the statute of limitations and prayed for the dismissal of such cross-complaint or demand.

Upon the hearing in the county court upon this matter the testimony of *Amelia E. Anderson,* taken by deposition, was received, and in such testimony she again under oath asserted that there had been no child born to her and the said George K. Reeve as had been theretofore alleged by her and that the child presented by her at Oshkosh in 1906 was said Marshall Beamon. Photographs had been taken of a then neighbor's child and of Marshall Beamon while *Mrs. Reeve* had him in Oshkosh in 1906 and which were on this hearing identified by the neighbor as being the child so represented by *Mrs. Reeve* to be *Lucas T. Reeve,* and such photograph was further identified by William Beamon, whose deposition was also taken and used on the hearing, as being of his son Marshall Beamon.

The trial court then adjudged that any and all proceedings by said court in the matter of the estate of George K. Reeve and in the matter of the guardianship of *Lucas T. Reeve,* a minor, in any manner adverse to the rights of *Mary E. Miller* and *Mary R. Fraker* as sole devisees of the real estate described as 161 Main street, were void and of no effect and were set aside; that the sum of $6,177.19 then in the hands of said *George B. Simmons* as guardian of *Lucas T. Reeve* is the property of, belongs to, and should be paid to said *Mary E. Miller* and *Mary R. Fraker* (said sum being

for the $4,500 paid by said petitioners in 1908, together with interest thereon, and concerning the correctness of which amount no question is made in these proceedings).

It was further held that the balance left in the hands of said *George B. Simmons,* as such guardian, should be held to stand and remain for the benefit of the said Marshall Beamon; that the relief prayed for by the said *Amelia E. Anderson* should be in all things denied and dismissed upon the merits, and that she be barred from any and all claim whatsoever against any of the balance of the funds remaining in the hands of said *George B. Simmons* as such guardian.

*Charles H. Forward* as guardian *ad litem* of said alleged infant, *Lucas T. Reeve,* and *George B. Simmons* as guardian, appeal from so much of the judgment of the court as directed the payment of the specified sum to *Mary E. Miller* and *Mary R. Fraker; Amelia E. Anderson* appeals from so much of the order as bars her from any claim to the balance of said fund in the hands of the guardian and as dismisses her cross-complaint upon the merits.

*Charles H. Forward* of Oshkosh, guardian *ad litem,* for the appellant *Lucas T. Reeve,* minor.

For the appellant *Amelia E. Anderson* there was a brief by *Louis Reuscher* and *Stewart & McDonald,* all of Oshkosh.

For the respondents there was a brief by *Thompson, Gruenewald & Hull* of Oshkosh, and oral argument by *John C. Thompson.*

The following opinions were filed February 7, 1922:

ESCHWEILER, J.   The explanation offered by *Mrs. Anderson,* formerly *Reeve,* as to her false assertion in February, 1902, of the birth of a child in October, 1901, and her subsequent similar assertions, is to the effect that her husband in the fall of 1901 had caused to be published and announced that there was a child born to them while

*Mrs. Reeve* was absent from Oshkosh, and that through his efforts a false certificate of the birth of such alleged child had been obtained from a physician in Indianapolis, Indiana, and recorded there, and that upon the death of George K. Reeve she desired to continue the representation which had been so made by him. She was of course thereby renouncing her right as sole heir at law of George K. Reeve to the ownership of No. 17 Main street, property subsequently sold for $7,000, and contented herself with asserting but a dower interest therein while continuing to carry out such representations.

The proper solution of the problem presented on this phase of the case is more within the field of psychology than that of the law, and we must content ourselves with saying that under the record as presented the trial court was amply justified in law and supported by the facts in reaching his conclusion, although based as it must be largely upon the testimony of *Mrs. Reeve* confessing the fraud she perpetrated upon the court, and it must therefore be taken as verities that George K. Reeve died without living issue him surviving; that upon his death all his title to No. 17 Main street passed to *Amelia E. Reeve,* his widow, as his sole heir at law; that upon the death of the widow of Thomas T. Reeve all the latter's title to 161 Main street passed to his residuary devisees, whose interests are represented by the petitioners herein.

The trial court was also justified in his finding that although the two daughters of Thomas T. Reeve had grounds for suspecting in 1902 that there was no surviving issue of George K. Reeve, yet in the face of the birth certificate recorded in Indianapolis, Indiana, and discovered by their agents, the continued assertion by *Mrs. Reeve* that there was a child *Lucas T. Reeve,* the producing of the child Marshall Beamon as such in Oshkosh, her continued assertion to the same effect in the proceedings instituted in 1908 whereby it was sought to question such claim, still their suspicions were

insufficient to warrant any reasonable expectation by them of success in then establishing such fraud, and that therefore they did not have sufficient knowledge to charge them with the duty of making positive assertion thereof until less than one year before the commencement of these proceedings, and the conclusion of the court based on such finding must stand.

It must be observed here that all the proceedings taken by *Mrs. Anderson* in connection with her strange fraud were done without the apparent advice of any one and without having retained on her own behalf any attorney, until apparently some time in 1918 she consulted with Mr. Louis Reuscher, a member of the bar of Cincinnati, Ohio, who, it is pleasing to note, upon learning the situation, with commendable promptness and propriety caused the real situation to be disclosed to the guardian and the others interested.

The purpose of the petitioners *Mary E. Miller* and *Mary R. Fraker* in asking for the relief granted them by the court below was twofold: one, to clear from the records of the probate court of Winnebago county all findings or adjudications which in effect held that there was issue surviving George K. Reeve, whereby the title of the petitioners under the will of Thomas T. Reeve to the real estate at 161 Main street would be subject to question, inasmuch as if there were such issue the petitioners had no title, if there were no such issue they had absolute title; and secondly, to have refunded to them the moneys paid by them in 1908 to the guardian in what was then a good-faith attempt on their part to purchase their peace from such assertion of a superior title to said real estate then falsely made by *Mrs. Reeve* and innocently, and therefore properly, maintained by the guardian.

From what has been said as to the very evident propriety of the finding by the trial court that under all the facts and circumstances there was no such knowledge on the part of the petitioners of the falsity of such brazen assertion by *Mrs. Reeve* that she was the mother of issue of George K.

Reeve him surviving as to charge the petitioners with any duty to do more than was done by them, it is clear that the petitioners cannot be deprived of their rights on the ground of any alleged laches on their part, and no more need be said on that score.

Neither can the petitioners be denied their right to relief as to either of the purposes presented in their petitions on the ground that they are barred by the provisions of any statute of limitations. If any such statute were applicable it could be none other than sub. (7) of sec. 4222, Stats., which requires the bringing within six years of any action for relief on the ground of fraud in any case which was before 1857 cognizable by the court of chancery, and providing that "the cause of action in such case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud."

Under the testimony supporting the conclusion of the trial court there was no such discovery of the fraud perpetrated by *Mrs. Anderson* to bring it within any reasonable interpretation to be given to the quoted language of the statute just above cited until within one year prior to the commencement of this action. The mere suspicion which had existed during all this time was not of sufficient weight and dignity to make it a discovery of the fraud such as is contemplated in the statute. *Estate of O'Neill,* 90 Wis. 480, 63 N. W. 1042; *O'Dell v. Burnham,* 61 Wis. 562, 570, 21 N. W. 635; 25 Cyc. 1192; *Larson v. McMillan,* 99 Wash. 626, 170 Pac. 324. And such is especially so where, as here, the knowledge as to the real facts is so particularly with the one who was so falsely asserting her motherhood and refusing to be examined as a witness, as she might perhaps continue to do, being at the time a nonresident. There was also in a measure an exhaustion by the petitioners of their sources of information when they had started their action in 1908, and their duty to proceed should be considered as then ended. 25 Cyc. 1193.

It is also evident that the relief sought in this case, which

involved primarily a clearing of the records of the probate
court of all proceedings which were the result of the fraud
perpetrated by *Mrs. Anderson* in her false assertion as to the
birth of issue of George K. Reeve, is one in which relief
could be sought only in a court of chancery.

We are also satisfied that the court below, in clearing its
records of the result of the fraud perpetrated upon it and the
restoring of the money to the petitioners, was amply justi-
fied upon still broader grounds than merely overruling the
objections interposed to such relief based upon the plea of
laches or of the statute of limitations.

At the close of the hearing and upon its conclusions as to
the facts as above stated, the county court found itself in this
position, viz.: that there was in its present control and sub-
ject to its orders a fund in the hands of one who was at
least a *de facto* officer of the court, namely the guardian; all
this pursuant to proceedings in the same court based upon the
false assumption that there was in existence a living sur-
viving issue of George K. Reeve, knowledge then brought
home to the court that there never has been any such minor,
present necessity of clearing its records of that which was
the result of fraud, and finally to make a lawful disposition
of such funds.

To meet and dispose of such a peculiar situation there
manifestly ought at least to be judicial power and authority
somewhere.  We have no difficulty in determining that there
exists such an inherent power in the very nature of the
county court having the primary duty of administering tes-
tate or intestate property.  Its duty and power, so far as it
affects the property of a deceased person, is not impaired by
mere lapse of time, so long at least as title to real property
under the special statutes regulating that subject is not ques-
tioned or rights of innocent purchasers of real or personal
property affected.  It may assume jurisdiction to administer
the estate of a deceased at a period long subsequent to the
death, and it long continues to have jurisdiction to clear its

records of that which, because of fraud, it was induced to do or for which it lacked jurisdiction.

Neither long and unexplained delay nor any provision of the statute of limitations can be successfully invoked against the power and duty of a probate court to probate a will whenever duly presented to it for that purpose. *Hanley v. Kraftczyk,* 119 Wis. 352, 356, 96 N. W. 820; *Will of Brandon,* 164 Wis. 387, 391, 160 N. W. 177; *Estate of Hume,* 179 Cal. 338, 343, 176 Pac. 681 (citing on page 346 decisions from Idaho and Kentucky only to the contrary) ; note to 57 L. R. A. 253. That a court of probate jurisdiction as distinguished from other courts has such inherent power over its judgments has been repeatedly declared by this court. *In re Fisher,* 15 Wis. 511, 521; *Israel v. Silsbee,* 57 Wis. 222, 228, 15 N. W. 144; *Archer v. Meadows,* 33 Wis. 166; *Estate of O'Neill,* 90 Wis. 480, 484, 63 N. W. 1042; *Parsons v. Balson,* 129 Wis. 311, 318, 109 N. W. 136; *Scheer v. Ulrich,* 133 Wis. 311, 316, 113 N. W. 661; *Estate of Staab,* 166 Wis. 587, 592, 166 N. W. 326.

The doctrine is recognized in other jurisdictions, as in *Fidelity & C. Co. v. Withington,* 229 Mass. 537, 118 N. E. 902, where a decree of the probate court discharging a surety, which discharge had been obtained on false statements then made to the court, was vacated although sixteen years had elapsed; and in *Jones v. Jones,* 223 Mass. 540, 112 N. E. 224, where a new order of distribution was made twelve years after the first one.

A decree of the probate court may be subsequently annulled when clearly shown to be without foundation in law or in fact. *Merrill T. Co. v. Hartford,* 104 Me. 566, 572, 72 Atl. 745.

It is also clear that the jurisdiction to grant such relief is primarily in such probate court rather than in a court of general equity power. *Archer v. Meadows,* 33 Wis. 166, 172; *Thompson v. Nichols,* 254 Fed. 973.

The reason for such broader and more unlimited power

as to its own proceedings being vested in probate courts may well be based upon the peculiar nature of such courts, as shown in the interesting discussion of the subject in *Waters v. Stickney,* 12 Allen (94 Mass.) 1, and because there an overlooked codicil to a will, found on the back thereof, was probated fifteen years after the will was admitted. Unlike the courts of purely civil jurisdiction, which are concerned primarily with disputes between the living, the probate courts always have in their administration proceedings as a silent party, but none the less never to be overlooked, the deceased, whose directions as to the disposition of his property, lawfully expressed by will, or, when intestate, by the statutes of administration, must be preserved by the probate court even as against the wishes and desires of all the living parties before the same court. *Will of Dardis,* 135 Wis. 457, 115 N. W. 332; *Will of Rice,* 150 Wis. 401, 448, 136 N. W. 956, 137 N. W. 778; *Estate of Staab,* 166 Wis. 587, 166 N. W. 326.

There was not merely improper exercise of jurisdiction by the probate court in the appointment of a guardian for the alleged minor, *Lucas T. Reeve,* but an absolute and complete want of jurisdiction. The actual existence of a minor for whom guardianship proceedings purport to be taken is as much an essential element for jurisdiction as is the death of an individual for whom administration proceedings are attempted.

The decisions are numerous that unexplained absence for over seven years, which in the law of evidence raises a presumption of death, is of no effect to give validity to administration proceedings where predicated upon such unexplained absence, the person being alive. *Melia v. Simmons,* 45 Wis. 334; *Wis. T. Co. v. Wis. M. & F. Ins. Co. Bank,* 105 Wis. 464, 469, 81 N. W. 642; *Will of Rice,* 150 Wis. 401, 136 N. W. 956, 137 N. W. 778; *Scott v. McNeal,* 154 U. S. 34, 49, 14 Sup. Ct. 1108, citing 45 Wis. 334, *supra,* and many

other cases, at p. 43; *Jochumsen v. Suffolk Sav. Bank,* 3 Allen (85 Mass.) 87; *Stevenson v. Superior Court,* 62 Cal. 60.

The distinction between such attempted administration proceedings, absolutely void because the individual whose estate is attempted to be administered is alive, and the statutory proceedings provided for in Pennsylvania under the police power, whereby the property of absentees is conserved and in some measure distributed, is clearly pointed out in *Cunnius v. Reading School Dist.* 198 U. S. 458, 25 Sup. Ct. 721, which distinguishes, at page 472, the situation presented under such statutes from those presented in the cases first above cited. A similar ruling is made in passing upon a like statute in Massachusetts in the two cases of *Provident Inst. for Savings v. Maloney,* 221 U. S. 660, 31 Sup. Ct. 661, and *Blinn v. Nelson,* 222 U. S. 1, 6, 32 Sup. Ct. 1.

If death as well as domicile at the time of the death are each jurisdictional facts necessary to exist in order that a probate court may administer an estate, as held in *Barlass v. Barlass,* 143 Wis. 497, 498, 128 N. W. 58, it must be equally true that actual existence of a ward is a jurisdictional fact required for any validity to an order of a county court appointing a guardian under sec. 3962, Stats.

There being no ward there could be no guardianship proceedings. And the court should therefore vacate and hold for naught its adjudications in such alleged guardianship proceedings. The court therefore finds itself with the control and disposition of a fund in the hands of a *de facto* officer of the court, for such the guardian must be held so far at least as the property in his hands is concerned, and the duty is plain on the court to restore, as he did, so much of the fund as has been improperly received from the petitioners. Manifestly neither the guardian nor the guardian *ad litem,* as such, can assert any personal right to have the

funds or any part thereof remain in their control, nor is there any one in whose behalf they may assert any right or interpose any plea.

The appeal of *Amelia E. Anderson* from the order of the court below dismissing her petition for the payment to her of the balance of the funds in the hands of the guardian presents a more perplexing question.

The Gordian knot so presented was solved by the trial court by declaring that the actions of *Mrs. Anderson* in presenting to the guardian and the court the minor, Marshall Beamon, as being the mythical and nonexistent *Lucas T. Reeve* and the living issue of George K. Reeve at the time of the appointment of the guardian and at about the time of the final settlement of the estate of George K. Reeve, her acquiescence in the assigning of the real property to the alleged *Lucas T. Reeve* as such heir and contenting herself with but her dower right, thereby vested that which would have belonged to *Lucas T. Reeve,* if there had been such infant, in and to the boy Marshall Beamon, and that she is now estopped by reason of her fraud from asserting title to the proceeds from the sale of the property.

Much as we regret to be obliged to hold that one like *Mrs. Anderson,* party to a deception on the court, should nevertheless be permitted to benefit by the very same proceedings and in the same court in which she perpetrated her fraud, yet nevertheless we feel constrained to hold that the disposition made by the trial court as presented here upon her appeal cannot be sustained.

She was not aware of the existence of Marshall Beamon and he formed no part of her design or scheme at the time of the application for administration on the estate of George K. Reeve in February, 1902. What she did then was certainly not with a view of conferring any benefit upon Marshall Beamon. That purpose, if it ever existed, could not have arisen before 1906, when she first met him. She then used him merely as an instrumentality in the scheme

which she had started long before. There was nothing in
the shape of a contract, express or implied, between her and
Marshall Beamon under which he could claim any cause of
action against her in connection with this transaction. Mar-
shall Beamon was not induced to do or refrain from doing
anything on his own behalf by reason of what *Mrs. Reeve*
did, and so no estoppel can arise. The property that was
being disposed of in the final decree in the estate of George
K. Reeve was practically all real estate. She conveyed no
interest in such property by any writing sufficient under the
statute of frauds to Marshall Beamon, either under his own
name or under the name of *Lucas T. Reeve*. She never
asserted, claimed, or had possession of the personal property
in the hands of the guardian so that she could, by delivery
thereof, make a valid gift *inter vivos* to said Marshall
Beamon. The rights and title of George K. Reeve in the
real estate, No. 17 Main street, passed to and vested in *Mrs.
Reeve* as his sole heir at law upon his death, and it became
and is now the primary duty of the probate court to ad-
minister the property and determine the ownership thereof
as of the time of such death. The balance of the fund
derived from the sale of the real estate, No. 17 Main street,
is now for all intents and purposes, and most assuredly so
far as *Mrs. Anderson* is concerned, substituted for such real
estate. It now must be disposed of according to the statutes
of distribution and as of the time of the death of George K.
Reeve. That the fraud of *Mrs. Reeve,* now *Anderson,* to
some extent thwarted and largely delayed that disposition,
cannot, we regret to say, defeat the disposition that the
statutes have declared the county court must make of in-
testate property.

The statutes of distribution place the title to this balance
of the fund in the hands of the guardian in *Mrs. Reeve* and
no one else, and that, therefore, must be the present disposi-
tion of such fund. It cannot remain in the hands of the
court, it cannot remain in the hands of the guardian. There

is no one who can assert a title to the same which can be recognized by the probate court other than *Mrs. Anderson* as sole heir at law of George K. Reeve, and, the law placing the title to that in *Mrs. Reeve,* the courts have no other alternative than to follow such statutory direction.

It follows therefrom that so much of the judgment of the court below as directed the payment of the specified amount to the petitioners is affirmed; so much thereof as denied the petition of *Mrs. Anderson* and dismissed the same must be reversed, and an order be made directing the payment to *Mrs. Anderson* of the balance left in the hands of the guardian, after deducting therefrom the proper allowances to be fixed by the court below for the services of the guardian and guardian *ad litem* as *de facto* officers of the court. The fees of the clerk of this court and the costs of the petitioners on this appeal are to be allowed out of the funds in the hands of the guardian. No other costs to be allowed.

*By the Court.*—So much of the judgment as awards payment to the petitioners is affirmed; so much thereof as directs the dismissal of the petition of *Mrs. Anderson* is reversed, and the cause remanded with directions to enter judgment in accordance herewith.

OWEN, J. (*dissenting*). I cannot agree that *Amelia E. Anderson* is entitled to relief at the hands of a court of equity. After perpetrating the most ingenious and deliberate fraud upon the court, she now comes in, confesses her perfidy, and asks relief from the consequences thereof. This, the majority opinion holds, must be granted in order to protect the sacred right of the deceased that his property descend in accordance with his will, which in this instance finds expression through the law regulating the descent and distribution of estates. That this is a sacred right and will be absolutely protected by the courts is readily conceded. That, in order to protect such right, ancient and well-

grounded principles, such as "He who comes into a court of equity must come with clean hands," will be disregarded and trampled upon, need not here be questioned.

The deceased husband of *Amelia E. Anderson* left no will. His real estate therefore descended as provided by statute. It vested in *Amelia E. Anderson* at the moment of his death. Probate proceedings were unnecessary for that consummation. The function of such proceedings was to clear the real estate of the lien of decedent's debts, to secure an adjudication as to who were his heirs, and a declaration of the court that his real estate vested in such heirs.

After the title to the real estate had vested in *Amelia E. Anderson,* after she was the absolute owner thereof, subject only to the lien of the debts of the deceased, she voluntarily instituted probate proceedings upon his estate, and in such proceedings declared in her petition that the deceased left him surviving a son by the name of *Lucas T. Reeve.* This declaration was false, and was made for the purpose of defrauding the residuary legatees of Thomas T. Reeve. In order to defraud them she had to relinquish her unqualified ownership of the real estate of which her husband, George K. Reeve, died seized. But this, it seems, she was willing to do in order to wrong the residuary legatees of Thomas T. Reeve. At any rate she did it voluntarily, and no reason is perceived why she could not do so. The title had already vested in her when she made application for probate proceedings upon the estate of her husband. At that time she could do as she pleased with her interest in that property. She could have given it away by her deed of conveyance, and the law vesting title to that property in her upon the death of her husband would in no manner have been defeated. When she made application for probate upon his estate, and stated in such application that he left him surviving *Lucas T. Reeve,* a son, it amounted to no more than a voluntary relinquishment of her absolute title to the real

estate. Neither the law, nor the will of the deceased, was frustrated any more than it would have been had she relinquished her interest by her deed of conveyance.

The sacred right of a deceased person to have his property go as he wills is not involved here. The property did go where it was willed, but after title thereto had vested in the beneficiary she voluntarily relinquished it. The right of a deceased person to have the title to his property vest in another does not deprive the beneficiary of the right to transfer the title to a third person. That is the simple result of the machinations of *Amelia E. Anderson* in this case, and the result which she might have accomplished by a deed of conveyance as well as in the manner adopted. It transpires that, when her purpose of defrauding the residuary legatees of Thomas T. Reeve is frustrated, she now wants to recover that with which she so willingly parted in order to consummate her fraud upon them. She now comes into court and in effect says: "If my plan to defraud is to be thwarted, I want my money back." If there ever was a case where a supplicant in a court of equity should be left exactly where she has placed herself, it is this case.

I do not appreciate the significance of the suggestion made in the majority opinion that when *Amelia E. Anderson* represented to the county court that her husband left a son by the name of *Lucas T. Reeve* she did not then have Marshall Beamon in mind as such son. She made the application with fraud in her heart, evidently with the purpose of producing a spurious son when the occasion should require. It might as well have been Tom Jones as Marshall Beamon. Marshall Beamon is but an accident in this case. He was represented to be *Lucas T. Reeve* merely because circumstances chanced to make him available for that purpose. She started out with the plan of defrauding, and simply seized upon Marshall Beamon as a necessary instrument most conveniently at hand to consummate her plan.

Now, then, what is the result in this case?   Upon his death the property of George K. Reeve descended to and vested in *Amelia E. Anderson.*   No probate proceedings were necessary in order to perfect her title.   She succeeded to whatever title he had.   When she became vested with that title it was her privilege to do as she pleased with the property.   She chose to make use of this property to accomplish fraud upon her sisters-in-law.   In carrying out this purpose it became necessary for her to relinquish a portion of her title thereto.   This she did freely and voluntarily, for a most despicable purpose.   She evidences no disposition on her part to recant, or to recover the property thus parted with, until she learns that her scheme to defraud has been discovered and is about to result in failure.   She then comes into this court, confesses her fraud, and asks this court to restore to her that with which she parted for the purpose of accomplishing her fraudulent intent.

This court says that it must do this in order to protect the sacred right of a deceased person to have his property go as he willed it.   To my mind, that principle is not involved.   Here the deceased's property did go as he willed it, and the beneficiary of his will simply dissipated it to gratify the basest of instincts.   This court should leave her just exactly as it found her.   It should not concern itself in the least as to what is to become of the money in the hands of the guardian.   He may not be entitled to it, but he came into possession of it as an innocent and unwilling instrument in *Amelia E. Anderson's* scheme to defraud her sisters-in-law, and certainly a court of equity should not assist *Amelia E. Anderson* in its recovery.   She does not come into court with clean hands, and the court should not be at all concerned with whether she recovers the money in the hands of the guardian of the mythical *Lucas T. Reeve.*   In my opinion, the judgment of the trial court upon this branch of the case should be affirmed.

Rosenberry, J.   I concur in the foregoing dissenting opinion of Mr. Justice Owen.

A motion for a rehearing was denied, without costs, on April 11, 1922.