Will of Pettee: Pettee (Robert A.), Appellant, vs. Pettee (Roger), and another, Trustees, Respondents.

*March 1—April 6, 1954.*

348

350

F r the appellant there were briefs by *Wood, Warner, Tyr, ell & Bruce,* and oral argument by *Jackson M. Bruce* and *William J. Mantyh,* all of Milwaukee.

F.or the respondents there was a brief by *Coe & Coe* of Rice Lake, and oral argument by *Laurence S. Coe.*

ᏞROWN, J.   We must affirm the order of the trial court denying Robert's demand that the trust be terminated. Paragraph Fourth of the will, *supra,* gives to the trustees discretion in paying to or withholding from Robert the corpus of the trust estate.   The trustees testified that in their judgment Robert, as of the time of hearing, was still incapable of properly caring for the trust fund.   Robert testified that he had had no experience in business management.   The trial court

found that the trustees' recommendation was within the bounds of their discretion and was made in good faith. Its finding, and its determination that the trust continue, are supported by the evidence and do not constitute an abuse of the court's discretion. We must sustain it.

Robert's proceeding to compel the delivery of the laundry to the trust estate is more complicated. In the first place, counsel for the trustees submit that the county court lost jurisdiction of this matter when time expired within which an appeal could be taken from the final judgment in the matter of Mrs. Pettee's estate, which final judgment directed the delivery by the executors to the trustees of Robert's share of the proceeds of the sale of the laundry. The trustees contend that relief, if any is available, must be sought in a court of general jurisdiction. Sec. 253.03 (2), Stats., determines this latter issue in favor of the county court's jurisdiction.

"The county court shall have concurrent jurisdiction to hear, try, and determine all matters and controversies which may arise between any personal representative, guardian, or trustee appointed by such court and any other person relating to title to or interest in real and personal property so far as such matter or controversy is incidental to and necessary for the complete administration of the estate, guardianship, or trust, and regardless of who has possession of the property or in whose name it may be, to the same extent and with like effect as such matters and controversies may be heard, tried, and determined in courts of general jurisdiction."

We have frequently held that probate courts have full equity jurisdiction to vacate orders and judgments made and rendered in the administration of estates when they were induced by fraud though time to appeal had expired when relief was sought. Many of such instances involve frauds practiced on the court itself, as in *Guardianship of Reeve* (1922), 176 Wis. 579, 186 N. W. 736, where a child introduced as that of the testator was not so in fact, or *Estate of Staab*

(1918), 166 Wis. 587, 166 N. W. 326, where the court was not informed that the will presented as that of a competent person was actually the will of an inmate of an insane asylum. To like effect is *Estate of Bailey* (1931), 205 Wis. 648, 238 N.W. 845. We consider that the county court had jurisdiction of this subject matter.

Throughout the proceedings in the trial court Roger Pettee and Mr. Stebbins objected to the court's jurisdiction because Robert's petition and the order of the court commanding them to appear cited them only in their capacity as trustees. They point out correctly that the executors were the sellers and Roger as an individual was the buyer. The trustees did nothing except to receive funds paid them by the executors under order of the court and thereafter they administered the funds in trust in a manner of which no complaint is made. They submit that until the parties are before the court in the capacities in which they are alleged to have wronged the petitioner the court lacks jurisdiction to determine if wrong has been done or to grant relief.

If we agreed with respondents in this jurisdictional question no doubt the petitioner would begin again against the same individuals in additional roles and what has been tried out now would be repeated with, possibly, some further defensive evidence pertinent to the new characters in which the individuals might be charged. If the merits of the case warrant it, we consider it our duty to avoid an unnecessary second trial and therefore we leave this jurisdictional question temporarily undetermined and proceed immediately to the merits upon the assumption that all parties, in all their capacities, are properly before the court.

The right to relief by a modification of the original order or decree in cases like this is founded in equity and therefore it may be lost to the injured party by his neglect to assert his rights or even by mere lapse of time if the delay impairs the equity of his claim. *Estate of Bailey, supra,* pp. 657, 658,

citing DIXON, C. J. in *Archer v. Meadows* (1873), 33 Wis. 166, 173.

The trial court was fully informed of all material facts at the time it signed the order directing the sale, as well as at the time of the final judgment and order of distribution. We are not dealing here with an order or decree induced by a fraud upon the court. Neither are we confronted by a situation such as that in the leading case of *Ludington v. Patton* (1901), 111 Wis. 208, 86 N. W. 571, relied on by appellant, where the beneficiary entered into an improvident contract in the erroneous belief, induced by the fiduciaries, that her only legal right was to take the provision made for her by the will. The testimony here develops no fact which was misstated or concealed from Robert and the only matter of which he now complains is the price paid to the estate for the property. The trial court, which heard the testimony, found and concluded that the price was the fair value of the laundry at the time of the sale, and we cannot say that this is contrary to the great weight and clear preponderance of the evidence. The property appears to have been much run-down during the war years when it was operated by Mrs. Pettee and one helper. Laundries in surrounding towns were able to compete by sending their trucks to Rice Lake. Appellant's evidence of substantial income in recent years in relation to the sale price is not so impressive when the fact is considered that no salaries for Roger who worked full time and his wife who worked part time in the business were charged against that income, and the income was largely spent in replacing machines and repairing the building and thus increasing the capital investment.

The fraud on which appellant relies most strongly is that inherent by law in every sale of trust assets by a fiduciary to himself.

"The policy of the law is to regard all transactions of a contract nature, between a trustee and his *cestui que trust,*

whereby the former obtains the interest of the latter, or some part thereof, in the subject of the trust, as presumptively fraudulent and void at the election of the latter. If such a transaction be permitted to stand it is upon condition that the trustee satisfies the court, fully and completely, that the *cestui que trust* received a full equivalent for that which he parted with, and that the transaction was to his advantage rather than to his disadvantage." *Ludington v. Patton, supra,* page 239.

Robert consented to this sale and joined in the petition for it but as Restatement, 1 Trusts, p. 609, sec. 216 (2), points out:

"The consent of the beneficiary does not preclude him from holding the trustee liable for a breach of trust, if

"(a) the beneficiary was under an incapacity at the time of such consent or of such act or omission; or

"(b) the beneficiary, when he gave his consent, did not know of his rights and of the material facts which the trustee knew or should have known and which the trustee did not reasonably believe that the beneficiary knew; or

"(c) the consent of the beneficiary was induced by improper conduct of the trustee; or

"(d) the beneficiary was not of competent age and understanding; or

"(e) the trustee had an adverse interest in the transaction, and the transaction to which the beneficiary consented involved a bargain which was not fair and reasonable."

Robert was not incompetent at the time of the sale. He was not a model citizen but his misbehavior and resulting troubles were not due to a lack of understanding. He had previously considered a sale of his interest in the laundry to Roger and for two months before the sale he was out of the navy and at home where at least he had the opportunity to be more familiar with the condition of the property than Roger, who was still in service. The inventory and the appraisal had been on file since April 11, 1945. Robert, how-

ever, submits that on July 9, 1945, he was mentally depressed and indifferent and did only what he was told.

Putting aside our doubts of the efficacy of the testimony on this subject to nullify Robert's consent to the sale, we note that for nearly seven years after the sale was consummated he accepted the benefits of the transaction. He moved about the country at will, writing home for money from his trust fund and at one time employing a lawyer to procure some of it for him. At least by August, 1947, he knew,—actually as well as constructively,—what the trust estate received in return for the laundry, and in the fall of that year, at a time he was working in the laundry at Rice Lake, he took $2,000 from the trust estate for a down payment on a house. Robert was not under the influence of Roger or Mr. Stebbins in the long time which passed before he repudiated the sale and all facts during his long silence were readily available to him. Meanwhile, in reliance upon Robert's consent and the order of the court, Roger continued to put money into the improvement of the property.

"The beneficiary cannot hold the trustee liable for a breach of trust if he fails to sue the trustee for the breach of trust for so long a time and under such circumstances that it would be inequitable to permit him to hold the trustee liable." Restatement, 1 Trusts, p. 627, sec. 219 (1).

The record here persuades us, as it did the learned trial court, that the price of the laundry was fair at the time the sale was made; that no actual fraud was practiced by any of the parties upon any other; that the sale was made upon the beneficiary's own petition and consent and that later, when he knew or should have known every material fact and was not subject to any influence by others, he affirmed the sale by accepting its benefits; and, finally, that if he ever had a right to a revocation of the sale and the court orders connected therewith, that right is now barred by his laches.

With this determination of the controversy on the merits, the question of the sufficiency of appellant's petition, which called for relief against trustees alone, becomes immaterial and is not decided.

*By the Court.*—Order affirmed.