Dick & Reuteman Company, Trustee, Plaintiff and Appellant, v. Doherty Realty Company and another, Defendants: Bunkfeldt and another, Intervenors and Respondents.

*March 9—April 3, 1962.*

344

For the appellant there were briefs by *Whyte, Hirschboeck, Minahan, Harding & Harland,* attorneys, and *Victor M. Harding* of counsel, all of Milwaukee, and oral argument by *Victor M. Harding* and *Malcolm K. Whyte.*

For the respondents there was a brief and oral argument by *Morris Karon* of Milwaukee.

CURRIE, J.   While appellant Dick & Reuteman Company has appealed from the whole of the order of November 8, 1961, no issue has been here raised with respect to those

portions of the order which direct the sale of the trust property and provide for an early liquidation of the trust. The two issues before us are:

(1) Because of its fiduciary relationship as trustee, are Dick & Reuteman Company, and its officers and affiliate, required to account to the trust estate for profits realized from the purchase of certificates of beneficial interest in the trust subsequent to September 17, 1942?

(2) Is Dick & Reuteman Company required to account to the trust estate for commissions realized from insurance it placed as trustee on the trust property subsequent to September 17, 1942?

It is apparent that the cutoff date utilized by the trial court, September 17, 1942, is based upon the fact that this was the date on which the court approved the written declaration of trust of September 16, 1942. Respondent intervenors have not filed a motion for review of the trial court's denial of an accounting of profits or insurance commissions realized from acts performed by appellant prior to this cutoff date.

### Accounting for Profits Realized from Purchase of Certificates.

It is a fundamental principle of the law of trusts that the trustee is under a duty of undivided loyalty to the beneficiaries of the trust. Restatement, 1 Trusts (2d), p. 364, sec. 170 (1); Bogert, Trusts and Trustees (2d ed.), p. 473 et seq., sec. 543; 2 Scott, Trusts (2d ed.), p. 1193, sec. 170. This duty of loyalty is violated where the trustee purchases an interest in the subject matter of the trust. Restatement, 1 Trusts (2d), p. 368, sec. 170, comment j. See also 2 Scott, Trusts (2d ed.), p. 1256, sec. 170.21. We deem particularly pertinent to the issues presented on this appeal the following statement made by the United States supreme

court in *Magruder v. Drury* (1914), 235 U. S. 106, 119, 35 Sup. Ct. 77, 59 L. Ed. 151:

"It is a well-settled rule that a trustee can make no profit out of his trust. The rule in such cases springs from his duty to protect the interests of the estate, and not to permit his personal interest to in anywise conflict with his duty in that respect. The intention is to provide against any possible selfish interest exercising an influence which can interfere with the faithful discharge of the duty which is owing in a fiduciary capacity."

A case closely parallel on its facts to the instant one is *In re Bond & Mortgage Guarantee Co.* (1952), 303 N. Y. 423, 103 N. E. (2d) 721. In that case the trustee for holders of participation certificates, in a trust mortgage on a hotel, brought a proceeding to settle his account. On objections of certificate holders, the referee required the trustee's attorneys, who had purchased certificates, to surrender them to the trustee and to account to the trust estate for profits they had received on trust distributions. The trustee had been appointed by the court and required to execute a *declaration of trust*. He had been vested with title to the trust estate for the benefit of certificate holders and directed to liquidate the trust in an orderly, businesslike manner. Trustee's attorneys had paid an average price of 16 cents on the dollar for the certificates they had purchased. Distributions by the trustee had amounted to about 56 cents on the dollar. There were no claims of fraud, bad faith, or manipulation by the attorneys. They had bought their certificates from dealers and brokers and had never solicited certificate holders or brokers to sell certificates to them. In response to inquiries from certificate holders, the attorneys had always advised them to hold rather than to sell. In the instant case, the testimony indicates that Dick & Reuteman Company gave similar advice.

The New York court of appeals held that the attorneys owed the same duties to the beneficiaries as the trustee, and that they breached their fiduciary obligation in making the purchases and were required to account for their profits to the trust estate. The court declared (303 N. Y. at pp. 430, 432) :

"One of the most-fundamental duties of a trustee in any case is complete unselfishness and inflexible loyalty to the interests of the beneficiaries of the trust. This duty stems from human frailty when confronted with conflicting interests, evidenced by the centuries-old scriptural passage: 'No man can serve two masters.'

"The attorneys, concededly in the same position as the trustee, owed an equally high degree of fidelity, . . .

". . . The basic vice is the existence of a personal interest, entangling their private claims with those of their beneficiaries, thus creating the danger of biased judgments and opening the way to fraud and wrong. That is sufficient to brand this conduct as a breach of fiduciary obligation under the circumstances here presented."

*In re Bond & Mortgage Guarantee Co., supra,* is cited with apparent approval in 2 Scott, Trusts (2d ed.), p. 1261, sec. 170.21.

The principal argument advanced by Dick & Reuteman Company, for reversal of that part of the order which requires an accounting with respect to profits from certificates purchased by the firm and its officers and affiliate, is that it owed a duty to the bond and certificate holders to maintain a market for the bonds and certificates. It is contended that this duty arose from the fact that Dick & Reuteman Company was the underwriter of the original bond issue as well as trustee, even though there was no express provision in the underwriting agreement or the trust deed imposing this duty. Mr. Loewi, a prominent investment broker with thirty-three years' experience in the investment field in Milwaukee, testified with respect to this duty. He stated

that, while maintaining the market is not part of the written obligation of the underwriter, it is normally a verbal obligation. Loewi further testified that this was a benefit to the bondholders. This is because, if no market is maintained a chaotic condition results whereby a bondholder, in need of converting his bonds into cash, might be forced to look for a buyer at a price way below that which would be the case if the underwriter maintained a market.

Great reliance is sought to be placed by appellant on *McGeoch Building Co. v. Dick & Reuteman Co.* (1948), 253 Wis. 166, 33 N. W. (2d) 252, 33 N. W. (2d) 864. That case involved an action by a mortgagor under a trust deed securing a bond issue against Dick & Reuteman Company, the trustee, and two of its officers for damages for breach of trust. The basis of the damages sought were the profits which the defendants had realized through purchase of some of the bonds secured by the trust deed at substantial discounts. The trial court entered judgment in favor of the plaintiff mortgagor but this court reversed. The decision was based on two grounds: (1) That the mortgagor had referred bondholders desiring to sell bonds to Dick & Reuteman Company, and this action constituted a waiver by the mortgagor of any right to claim that the purchase of bonds by Dick & Reuteman Company was a breach of trust; and (2) that there was no breach of trust because the maintenance of a market by Dick & Reuteman Company benefited both the mortgagor and the other bondholders. The opinion concedes that the principles of trust law, hereinbefore stated in the instant opinion, are applicable to the ordinary trust relationship, but holds that the relationship of the parties is different under a trust indenture securing a bond issue. It was stressed that the trustee represents the mortgagor as well as the bondholder.

It is easy enough to distinguish the facts of the *McGeogh Case* from those present on the instant appeal. In addition

to differences already mentioned, there was no foreclosure sale in the *McGeogh Case* and bondholders were ultimately paid in full. However, the language of the opinion, stressing the good-faith maintenance of a market by Dick & Reuteman Company and the resulting benefits to the mortgagor and the bondholders, is not to be brushed aside lightly. However, we are satisfied that the holding in the *McGeogh Case* is not controlling here. This is because the confirmation of the foreclosure sale by the circuit court in August, 1942, eliminated the mortgagor from the picture. As a result, any special rights conferred by the mortgagor upon Dick & Reuteman Company, which were inconsistent with the trust principle of undivided loyalty to the certificate holders, also were eliminated. From thence forward, Dick & Reuteman Company no longer acted in the dual capacity of underwriter and trustee, but only as trustee.

However, it would not be inconsistent with the trust principle of undivided loyalty for a trustee to acquire or sell interests in the trust corpus with the *express* approval of the administering court, granted either in the court-approved declaration of trust or upon application by the trustee. Appellant contends that such an authorization exists in the instant case because the original trust indenture was incorporated by reference in both the order confirming the foreclosure sale and the declaration of trust. Its brief stresses the following provision in the circuit court's 1942 order confirming the foreclosure sale:

"It is further ordered and adjudged that the title to the mortgaged premises and the whole estate therein be and the same hereby is vested in Dick & Reuteman Company, *as trustee under the mortgage involved herein, subject only to the execution of the trusts created by said trust mortgage,* in accordance with the law and equity, *and as pertaining to the duties of said trustee in respect to said trusts,* and that the person or persons for whose benefit said trusts were so created and exist have and take no estate or interest

in said mortgaged premises, but may enforce the performance of said trusts." (Emphasis supplied.)

We do not interpret the italicized words in the above-quoted portion of the order as preserving any of the rights, or imposing any of the duties, of an underwriter upon the trustee. The phrase, *"trusts created by said trust mortgage,"* surely is not to be construed as having any reference to an implied duty of Dick & Reuteman Company, as underwriters, to continue to maintain a market for the bondholders' beneficial interests in the trust. Viewing the question most favorably to Dick & Reuteman Company, there was sufficient doubt about the question that, as trustee, it should have applied to the court for instructions before proceeding to purchase certificates of beneficial interest. Bogert, Trusts and Trustees (2d ed.), p. 476, sec. 543, states:

"In most cases it is unnecessary for the trustee to act in two capacities, in order to advance trust administration, and in permitting self-dealing to enter the trustee is gratuitously exposing the beneficiaries. to a risk. If peculiar circumstances make it necessary to allow the trustee to act for himself as well as for the beneficiaries with regard to a particular transaction, relief can be had by an application to the court."

Furthermore, the trial court made a specific finding of fact that, after September 17, 1942, Dick & Reuteman Company, its officers, and affiliate, did not make any purchases of certificates of beneficial interest for the purpose of maintaining a market, but that their purchases were made as corporate or personal investments. In making this finding, the court had the right to disregard testimony to the contrary which contravened reasonable probabilities. It is significant that, although Kadish testified that in his opinion certificate holders would eventually realize 260 percent of par value, none of the purchased certificates were ever of-

fered for resale. A further material circumstance is that most of the purchases were made in the names of the two officers and John G. Reuteman, Inc., rather than in the name of Dick & Reuteman Company. While it would be possible, upon this finding of fact, to ground affirmance of that part of the order relating to these purchases, we prefer to base our determination upon the broad principles of trust law hereinbefore discussed.

It is our conclusion that the attacked purchase of the certificates after September 17, 1942, did constitute a breach of trust, and that the trial court's order relating to the certificates so purchased must be affirmed.

Appellant raises no issue with respect to the fact that the certificates purchased by the two officers and John G. Reuteman, Inc., are also required to be surrendered by the trial court's order. However, if a trustee cannot be permitted to profit from purchases of beneficial interests in the trust, neither can its officers or affiliate. Cf. *Mosser v. Darrow* (1951), 341 U. S. 267, 71 Sup. Ct. 680, 95 L. Ed. 927.

We deem it advisable to point out that since 1939 under federal law, and since 1941 under state law, an underwriter of a security issue is prohibited from also acting as trustee under the trust indenture which secures the issue. Federal Trust Indenture Act of 1939, 15 USCA, p. 325, sec. 77 jjj (b) (2); sec. 189.13 (4) (d), Wis. Stats., enacted by ch. 327, Laws of 1941. While these statutes have no application to any trust indentures executed prior to their enactment, they are indicative that both the congress and the state legislature have recognized that a conflict of interest may result if the same person is both underwriter and trustee. It is not difficult to perceive that a conflict of interest could arise from the purchase, by the instant trustee in its own name, of certificates of beneficial interest offered for sale by the holders, even without solicitation on its part. This is because if, at the price offered, the trustee deemed the pur-

chase advantageous for its own investment purposes, the other certificate holders might also have considered the price attractive enough to assent to requesting court approval of the purchase for the trust estate out of trust funds on hand. Another possibility of conflict might arise with respect to the diligence of Dick & Reuteman Company as trustee in attempting to sell the trust property, or in voting its own certificates in favor or against a proposed offer of purchase. The fact that the trustee, its officers, and affiliate, acted in good faith in making the purchases, and that no actual damage resulted to the other certificate holders, is entirely immaterial. *Will of Gabel* (1954), 267 Wis. 208, 211, 64 N. W. (2d) 853; Bogert, Trusts and Trustees (2d ed.), p. 479, sec. 543.

## *Insurance Commissions.*

Dick & Reuteman Company contends that it should not be required to account for commissions realized from acting as insurance broker in insuring the trust property. In support of this contention, it argues that the original trust deed authorized it to write this insurance, and that there has been no extinguishment of the trust deed.

The underwriting agreement between the mortgagor and Dick & Reuteman Company expressly required the mortgagor to insure the mortgaged property through Dick & Reuteman Company, and the trust deed contained a like provision. However, the trust deed contains no provision which expressly required the trustee to insure the property if the mortgagor defaulted in performing its covenant to insure. There is a provision which granted the trustee a lien upon the mortgaged property, having priority over the lien of the bonds, for any moneys advanced by the trustee for taxes and insurance. At best, these documents only impliedly gave trustee the right to insure through itself.

So long as the mortgagor was a party to the trust, any authorization embodied in the trust deed, permitting self-dealing by the trustee, was binding upon the bondholders. However, once the mortgagor was entirely eliminated as a party to the trust, and it was provided that the trust was to be administered under the direction and control of the court, any prior right of self-dealing disappeared. This court will assume that when it is provided that a trust will be administered under the direction and control of a court, the court will apply the general principles of trust law, including the prohibition against self-dealing, unless there is an express provision permitting an exception thereto.

The circuit court's order confirming the foreclosure sale had the effect of extinguishing any covenants of the mortgagor under either the underwriting agreement or the trust deed. This order made no direct reference to insurance, but the declaration of trust did. This instrument requires the trustee to "protect and insure the premises against loss or damage by fire and windstorm and against other hazards as is [sic] usually and customarily carried on similar property, all subject, however, to the direction and control of this court." If there existed theretofore an implied right in the trustee to insure through itself, it was supplanted by this express provision. We cannot believe that, when the circuit court approved this declaration of trust, it contemplated self-dealing and retention of profits by the trustee.

In view of this determination, we hold that the trial court's order properly required Dick & Reuteman Company to account for the insurance commissions.

*By the Court.*—Order affirmed.