BISCHOFF, Assignee, Respondent, v. FIRST WISCONSIN TRUST COMPANY, Appellant.

*March 4—April 12, 1966.*

584

For the appellant there were briefs by *Godfrey & Kahn,* attorneys, and *Dudley J. Godfrey, Jr., James Ward Rector, Jr.,* and *James Ward Rector* of counsel, all of Milwaukee, and oral argument by *James Ward Rector* and *James Ward Rector, Jr.*

For the respondent there was a brief by *Martin R. Paulsen* and *John F. Zimmermann,* both of Milwaukee, attorneys, and *Lee W. Meyer* of New York, N. Y., of counsel, and oral argument by *Mr. Meyer.*

HEFFERNAN, J.

*Does the judgment in the Cudahy Case bar the plaintiff's claim in this action?*

We conclude that the issues that the plaintiff herein seeks to have adjudicated were argued, considered, and determined in the *Cudahy Case,* and are now barred by the doctrine of *res judicata* as the result of the earlier judgment.

The first case was brought by the trustee to determine whether the appointment of Helen Bischoff was legally effective in view of the partial release previously execut-

ed by Mrs. Hoyt. This was a request for a declaration of the rights of the parties concerned and for a delineation of the powers and duties of the trustee. It was in effect a request for a declaratory judgment (see Restatement, 1 Trusts, p. 806, sec. 259). We consider that the matters determined in a probate or trust proceedings are binding upon the parties provided that the issues between the parties are raised, litigated, and decided. Since pleadings subsequent to the petition are not required in the sense employed in legal actions, it is more difficult to determine at the outset of the proceedings the exact points at issue.

We conclude, however, that these points may be determined by the affidavits, briefs, and statements of the parties. Using those documents of the record in *Cudahy,* we conclude that the trustee has sustained the burden of showing that the issue now raised, rescission by reason of mistake of law or fact, has been presented and decided before. *McCourt v. Algiers* (1958), 4 Wis. (2d) 607, 611, 91 N. W. (2d) 194; *Lingott v. Bihlmire* (1964), 24 Wis. (2d) 182, 189, 128 N. W. (2d) 625, 129 N. W. (2d) 329. A review of the record shows an identity of parties, subject matter, and cause of action. *Wentworth v. Racine County* (1898), 99 Wis. 26, 31, 74 N. W. 551; *Gohr v. Beranek* (1954), 266 Wis. 605, 609, 64 N. W. (2d) 246.

In the probate court action, in response to the trustee's application, counsel for Mrs. Bischoff, in addition to claiming the revocation of the release by the will, alleged: That the inducement for the signing of the release was the erroneous legal opinion of January 19, 1944, that incorrectly and ineffectually promised tax avoidance; that the controlling case was *Stone v. Stone* (1947), 319 Mich. 194, 29 N. W. (2d) 271; and that that case was a complete answer to the ultimate issue before the court. The right of rescission was the central issue in *Stone*. In that case the owner of a business mistakenly thought

that by conveying a portion of his ownership interest to his wife and children, he would be able to reduce taxes. Upon a determination that he had mistaken his antecedent legal rights, the court permitted a rescission of the earlier conveyance.

The plaintiff by relying on *Stone* was pointing out that her remedy and the ultimate issue "before" the court was that of rescission for mistake. Significantly in the same document plaintiff's counsel assured the county court:

". . . it is not necessary to commence an independent suit in equity to have the 1944 release declared null and void . . . This court has the jurisdiction to give both legal and equitable relief . . . the release can be impeached without an independent proceeding in equity to set it aside."

It is obvious that plaintiff was not then asserting merely the revocation of the release by the subsequent attempt to exercise the power of appointment. She was clearly asserting the alternative equitable remedy of rescission.

Mrs. Bischoff's reply brief in the probate court again referred to the doctrine of *Stone v. Stone, supra,* as "dispositive" of the proceedings. It is apparent that Mrs. Bischoff's counsel not only considered and asserted the position that the release should be rescinded for mistake, he in addition argued that it was the *conclusive* issue of that proceeding. There is no doubt, to quote counsel's own words, that what was being urged was that "within the meaning of *Stone v. Stone* . . . a court of equity may rescind the otherwise irrevocable transfer."

At the probate court level, her counsel filed a request for adjudication for the purpose of showing the "issues that were raised and presented for adjudication." A perusal of that document shows that 15 paragraphs are devoted to directing the attention of the court to the factual and legal issues that arose out of the alleged mis-

take of law or fact that induced the signing of the release.

In October of 1962 Judge MUDROCH, the probate judge in *Cudahy*, issued an opinion stating that he had considered *Stone v. Stone* and found it inapplicable because it referred to an income-tax situation. The *Stone Case* was cited by the plaintiff and could have been considered by the court only for its relevancy to the equitable doctrine of rescission on the ground of a mistake of fact and law.

In addition to questions of law submitted by plaintiff's counsel to Judge MUDROCH, which together with the court's answers were made a part of the record, counsel asked, "Did Mrs. Hoyt have the power to cancel the 1944 release by an appointment in her will after the sole purpose for which she executed the release had failed?" It is apparent considering the record as a whole, and the context in which framed, that the question referred to Mrs. Hoyt's right of rescission subsequent to the execution of the release as the result of the alleged erroneous legal advice. The court specifically answered that question, "Mrs. Hoyt did not have the power to cancel the 1944 release . . . ."

Subsequently Judge MUDROCH entered judgment to the same effect. The plaintiff then appealed to this court. A review of the briefs and records filed in that case, *In re Cudahy Family Trust* (1963), 22 Wis. (2d) 198, 125 N. W. (2d) 344, show that plaintiff, on appeal, continued to urge the doctrine of equitable rescission and again relied on *Stone*.

We could continue to itemize *ad nauseam* the plaintiff's contentions in *Cudahy* that equity should give relief where the release was executed upon a mistake of antecedent legal rights. Suffice it to say that the briefs submitted therein are replete with arguments and authority bearing on equitable rescission. Clearly, plaintiff argued not only legal revocation, but equitable rescission. Both points were presented to this court, and both of them were considered and adjudicated.

If any doubt remained, it would be dispelled by plaintiff's motion for rehearing and our denial of it. In its brief on motion for rehearing, plaintiff specifically asked that "this court should afford such relief [rescission] now so as to avoid the injustice . . . ." The rehearing argument was almost exclusively on the question of rescission for mistake of antecedent legal rights. We note that some of the language of the briefs submitted then is almost identical with that of the briefs now submitted that concededly urge rescission. We find it difficult to follow plaintiff's argument that the question of mistake and rescission has not been dealt with in the earlier case.

The issue of mistake and rescission was clearly presented to this court on the entire record in the *Cudahy Case* and was determined by the mandate. On rehearing, the question of mistake and rescission was raised independently and for a second time.[1] Rehearing was denied because the points urged then had been raised by the plaintiff in the case itself and were disposed of by the judgment. Our refusal to direct further trial on the question of mistake was grounded upon the fact that that issue was presented to the court, considered, and found to be without merit.

Additionally, plaintiff takes the position that it cannot now be bound by the earlier judgment, because no one in the earlier action had legal standing to raise the question. Plaintiff's argument is that the right to rescind was a right personal to Mrs. Hoyt and that upon her death only her personal representative could assert her cause of action, and that only in this action, subsequent to the assignment of the executor's rights to her, was this cause of action before the court.

---

[1] We call to mind the statement of Gen. Nathan Bedford Forrest, that semi-literate cavalry genius of the Confederate States of America, who, after twice refusing a private's request for furlough, scribbled on the back of the form, "I told you twicest Godamnit know." Andrew Lytle, Bedford Forrest and His Critter Company (rev. ed. 1960), p. 372.

In the *Cudahy Case,* the First Wisconsin Trust Company, by virtue of its dual capacity as trustee and executor, was impotent itself to assert the equitable affirmative defense of rescission for mistake. However, as pointed out above, this issue was raised and litigated by the plaintiff. We, in *Estate of Hoyt, supra,* recognized the right of a beneficiary of an estate to defend the plan of estate distribution when the executor, through no fault of his own, finds it impossible to act. The duty of the executor to defend the rights of a beneficiary extends also to the assertion of affirmative defenses. The conduct of Mrs. Bischoff in the *Cudahy Case* in asserting the affirmative defense of rescission was within the purview of the executor's authority and was a cause of action that the beneficiary, Mrs. Bischoff, could and did assert not only on her own behalf, but also on behalf of the estate of Mrs. Hoyt, when it was apparent that the executor could not raise the point. The executor's right to assert the equitable cause for rescission was vicariously exhausted in the earlier action. The cause of action, that purportedly was assigned in the probate court in this case, was for a cause already moot.

The points now raised were presented and decided before in a proceeding involving the same issue, the same parties, and the same cause of action. The action herein is barred by the previous judgment. The point is *res judicata.*

The plaintiff has based its cause primarily upon this court's previous expression of sympathy for one who by circumstances was powerless to enforce the obvious wishes of the testator that she (Mrs. Bischoff) be the recipient of the life income. To say that the equities "are strikingly in favor of Mrs. Bischoff" was merely an expression of that sympathy and of our regret that we were powerless to change the course of irrevocable and irrescindable circumstances.

We conclude therefore that no questions remain unlitigated. The order should be reversed and judgment granted to the defendant dismissing plaintiff's complaint.

*By the Court.*—Order reversed.