HAMMES, and others, Appellants, v. FIRST NATIONAL BANK & TRUST COMPANY OF RACINE, and another, Respondents.

*No. 75–481.   Argued May 31, 1977.—Decided July 1, 1977.*
(Also reported in 255 N. W. 2d 555.)

For the appellants there was a brief by *Foley & Capwell, S. C.* and oral argument by *John T. Bode* and *Rex Capwell*, all of Racine.

For the respondents there was a joint brief by *Hand & Quinn* of Racine; *L. William Staudenmaier* and *Cook & Franke, S. C.* of Milwaukee; and *Glenn R. Coates, Robert H. Bichler* and *Thompson & Coates, Ltd.* of Racine, and oral argument by *L. William Staudenmaier* of Milwaukee, and *Robert H. Bichler* of Racine.

DAY, J. This is an appeal from a judgment and an amended judgment entered for the defendants-respondents July 17, 1975 and October 1, 1975 respectively. The latter judgment supercedes the former. Plaintiffs-appellants commenced the action in March 1970. The judgments appealed from were made upon the granting of defendants' September 11, 1973 motion for summary judgment.

The action alleges breach of fiduciary duty and negligence by the defendants in their capacity as trustees. The precipitating event leading to this lawsuit was the sale by plaintiffs, on the advice of defendants, of certain

shares of stock which were subsequently resold at a price considerably higher than the price received by plaintiffs. Plaintiffs are the widow, son and three daughters of the late Quinten A. Hammes, Sr. Through his will and the widow's statutory election plaintiffs inherited the beneficial ownership of a large quantity of stock in the In-Sink-Erator Manufacturing Company (ISE) of Racine, which stock was held in trust.[1] The minor child (Jennifer Louise Hammes) is represented by her guardian ad litem; plaintiff Marine National Exchange Bank is the successor co-trustee of the inter vivos term trusts and testamentary trusts described in the margin.

Defendant First National Bank and Trust Company of Racine (hereinafter bank) was the co-trustee of the testamentary trusts just mentioned until May 7, 1971. The bank was also trustee of the term trusts. Defendant George J. Kuehnl, an attorney-at-law, was a co-executor and a co-trustee of the four testamentary trusts under the will.

---

[1] Between 1961 and 1963 Quinten Hammes, Sr. established, among others, four living term trusts, one for each of his children. Defendant bank was managing co-trustee. Each term trust was funded with voting trust certificates representing the beneficial but not the voting interests in common stock of ISE; each trust was created for a period of ten years and one month and was irrevocable during that period. Under the terms of the trusts, upon their expiration the principal or corpus would revert either to Quinten A. Hammes, Sr. or, in the event of his death, to his estate. He died October 27, 1963.

The will established four testamentary trusts, one for each of testator's four children. The widow, plaintiff Lois Hammes (now Mohrbacher), chose to exercise her statutory dower rights. In accordance with the will, term trusts and statutory election, two-thirds of the reversionary interest in the term trusts was ultimately assigned to the testamentary trusts. One-third vested in the plaintiff Lois Hammes Mohrbacher. (Affidavit of James D. Beckett, trust office of defendant bank (R. 414–417).)

The issue in this case is whether the defendants were entitled to summary judgment on the ground this action for damages in circuit court by trust beneficiaries against former trustees is barred, under principles of res judicata, by prior probate court orders discharging one trustee and approving the sale of stock which was held in trust. We conclude summary judgment was improperly granted. Plaintiffs may proceed to attempt to establish their causes of action for breach of fiduciary duties and negligence through proof at trial. In light of the prior probate court orders, however, plaintiffs will be additionally required to prove those elements which would have been necessary to bring a direct attack against the orders, had the action been brought in county court to set aside the prior county court orders.

The major events leading up to this litigation are as follows: By agreement dated March 14, 1966 plaintiffs agreed to sell to ISE their inherited shares of ISE stock for an aggregate amount of $700,000. The agreement provided for prior review and approval by the probate court and was found to be in the best interests of the trust beneficiaries and approved by the probate court of Racine county April 1, 1966.

On March 28, 1966 the probate court of Racine county issued orders formally discharging defendant Kuehnl as trustee of the testamentary trusts.[2] Kuehnl's resignation was prompted by the anticipated sale of the stock to ISE.

The orders said in part,

"(T)he resignation of George J. Kuehnl, as Individual Trustee of said trust be and it is hereby accepted, and he is hereby discharged as such Trustee, and released of all obligations and liability as said trustee."

[2] The court named Quinten Hammes, Jr. as successor trustee of his own trust and Charles F. Mohrbacher (Lois' new husband) as successor trustee of the trusts for the minor children.

Prior to the discharge, on March 24, 1966, waivers of notice and consent to entry of orders appointing the successor trustees were signed. In the case of the testamentary trusts for the minor beneficiaries, the waiver and consent was signed by their mother Lois Hammes Mohrbacher, Harold A. Konnak, the minor's guardian ad litem, and an officer of the defendant bank as corporate trustee. Quinten A. Hammes, Jr., who had reached his majority, signed his own waiver and consent and appointed himself successor trustee (with the bank). Each such waiver read in part,

"Petition having been filed for the acceptance of the resignation of George J. Kuehnl, as Individual Trustee, and his release and discharge as such trustee from all obligations and liabilities of any nature whatsoever, as such trustee; and for an order appointing as successor trustee, without bond, . . . and the issuance to him of Letters of Trust.
"The undersigned, being all of the persons interested in the above proceeding, and over the age of 21 years, and fully competent, hereby enter appearance, and waive any and all notice of the above proceeding, and consent to an immediate hearing without notice and to the granting of the prayer of said Petition."

On April 1, 1966 the probate court issued orders with respect to each testamentary trust approving the sale of ISE stock. The orders followed a hearing, held the same day, at which the propriety of the sale was discussed. The orders approving the sale said in part,

"(T)he sale of the trust(s') interest in said shares and/or voting trust certificates is in the best interests of the trust beneficiar(ies) and is in accordance with the well established principles of trust management and administration.
". . . (T)he said Contract (of sale) of March 14, 1966 is fair and equitable and it is in the best interests of the beneficiar(ies) of the trust(s) to approve said Contract."

In early 1968 ISE merged with Emerson Electric Company. The stock previously sold by plaintiffs was, for the purpose of the merger, valued at approximately $4.7 million. It is the position of the plaintiffs that their decision to sell their ISE stock in 1966 at the considerably lower price of approximately $700,000 was made on the advice of the defendant trustees who because of their own connections with ISE, had breached their fiduciary responsibilities to plaintiffs through a course of conflict of interest, self-dealing, and negligence.[3]

It is not disputed that during his tenure as co-trustee of the testamentary trusts defendant Kuehnl was simultaneously corporate secretary of and counsel for ISE. Plaintiffs allege Kuehnl was actively engaged in all of these roles during the negotiations for the sale, transmission by ISE of the offer to purchase, and acceptance of the offer which culminated in the contract of sale.

According to the affidavit of George E. Shoup, a vice president in charge of administration of ISE, Kuehnl first conveyed to ISE the idea that it should offer to purchase plaintiffs' stock. Kuehnl also was a participant in an ISE internal management committee which formulated the price per share which ISE would offer the plaintiffs, according to Shoup. ISE discussions concerning the offer to purchase took place as early as February 25, 1966. James D. Beckett, vice president in charge of the trust department at the defendant bank, testified Kuehnl acted as a "go-between" the bank, the trustees and ISE.

There are also allegations, raised by deposition testimony, that defendant bank, prior to the April, 1966 sale, was aware that those ISE stock interests which were the subject of the sale were, subsequent to that sale, to be

[3] April, 1971, the plaintiffs settled with defendant officers of ISE and Emerson Electric Company for the sum of $400,000.

resold, subject to restrictions, by ISE to various officers and employees of ISE, including Kuehnl. At the April 1st hearing Shoup said one of the reasons that ISE desired to acquire ISE stock was "the participation of management in equity ownership of the company." There is also deposition testimony by Shoup and Kuehnl that each had arranged financing with defendant bank in order that each could individually purchase shares of the stock which had been purchased by ISE from the plaintiffs. Negotiations with the bank to obtain this financing occurred at least as early as April 4, 1966 or three days after the probate court had approved the sale.

Kuehnl left ISE in late 1966 and was required to sell his shares back to ISE at that time.

Deposition testimony of Alice Foster, a trust officer at defendant bank, would if believed by the finder of fact, also establish that no negotiations were conducted between the bank and ISE concerning the price at which plaintiffs' stock should be sold.

When Quinten A. Hammes, Sr., died, an independent investment analyst was hired to determine the fair market value of ISE stock for death tax purposes. There is deposition testimony that prior to the sale defendant bank had in its possession an updated version of the stock valuation formula. This updated version, based on ISE records as of December 31, 1965, put a valuation on ISE stock at approximately fifty dollars per share more than what ISE had offered.

Defendants, by their affidavits and other proof in support of a motion for summary judgment, establish the circumstances previously mentioned leading to the probate court orders discharging Kuehnl and approving the sale of stock. Kuehnl states in his affidavit that his recommendation to sell the stock was in the best interests of the plaintiffs. It is pointed out that plaintiffs held a minority nonvoting interest in a closely held, single prod-

uct corporation. Kuehnl also states he felt he was under a duty to diversify plaintiffs' holdings.

The trial court granted summary judgment for the defendants on the basis of the affidavits and other proof which were submitted. It decided this action was barred, on the principles of res judicata, by the Racine county probate court's orders of March 28, 1966 discharging defendant Kuehnl as trustee and subsequent orders of April 1, 1966 approving the sale.

Matters determined in a probate or trust proceeding are binding upon the parties provided the issues between the parties are raised and litigated, and assuming there is an identity of the parties, subject matter and cause of action between the two proceedings. *Bischoff v. First Wisconsin Trust Co.*, 30 Wis.2d 583, 588, 141 N.W.2d 188 (1966) ; *Rahr v. Wittmann*, 147 Wis. 195, 202, 132 N.W. 1107 (1911). A final adjudication is conclusive in a subsequent action between the same parties not only as to all matters which were litigated, but also as to all matters which might have been litigated in the former proceedings. *Werner v. Riemer*, 255 Wis. 385, 403, 39 N.W.2d 457, 39 N.W.2d 917 (1949) ; *Laundry v. Schott*, 54 Wis.2d 723, 725, 196 N.W.2d 692 (1972).[4] But the res judicata effect of a county court order is dependent upon competent jurisdiction and an absence of fraud. *Shaughnessy v. Ohio Casualty Ins. Co.*, 66 Wis.2d 280, 283–284, 224 N.W.2d 198 (1974), citing *Meyer v. Barth*, 97 Wis. 352, 72 N.W. 748 (1897). 3 MacDonald, *Wisconsin Probate Law And Practice*, sec. 18.140, p. 72 (7th ed. 1973) (hereinafter "MacDonald").

In probate, the county court is a court having only such jurisdiction as is conferred upon it by statute. *In Matter*

[4] *Accord: Cohan v. Associated Fur Farms, Inc.*, 261 Wis. 584, 597, 53 N.W.2d 788 (1952); *Northwestern N. C. Co. v. State A. & C. Under.*, 35 Wis.2d 237, 244, 151 N.W.2d 104 (1967).

*of Estate of Corey,* 73 Wis.2d 644, 647, 245 N.W.2d 902 (1976) ; *Gerlach v. Thiem,* 58 Wis.2d 113, 117, 205 N.W. 2d 779 (1973).[5]

In *Gerlach* we held that the probate court was without jurisdiction to try an action in tort alleging negligence and fraudulent conduct on the part of (*inter alia*) the executor of an estate. Part of the estate consisted of shares of stock in the Thiem Corporation. Defendant bank, the executor, entered into negotiations for the sale of the stock back to the corporation. It was alleged the bank officers who handled the sale assured the plaintiff heirs that no public offering of the stock was contemplated. The probate court ordered the bank to consummate the sale and final judgment was then entered discharging the bank as executor. One week later the corporation announced a public offering of the stock; the just-sold shares of the plaintiffs quickly appreciated in value.

Action was brought in circuit court against both the bank (and its trust officers) and the corporation alleging the bank was negligent and derelict in connection with the sale. Appeal was from an order of the circuit court denying defendants' motion to dismiss for lack of jurisdiction. This court affirmed holding the circuit court had jurisdiction and the probate court did not. In discussing the limited jurisdiction of the probate court, it was said at 58 Wis.2d 118 :

> "*Will of Reinke* (1951), 259 Wis. 398, 403, 48 N.W.2d 613, points out that a county court in probate is a court of limited jurisdiction and, when acting within its probate jurisdiction, is confined to those matters which are incidental to its probate jurisdiction. *Will of Reinke* cites *Estate of George,* supra, page 264, for the proposition " ' "Merely because the estate of a decedent has interests of various kinds, that fact does not operate to extend

[5] *Also see, Estate of Schmalz,* 58 Wis.2d 220, 226, 206 N.W.2d 141 (1973); *McDonald v. McDonald,* 53 Wis.2d 371, 388, 192 N.W.2d 903 (1971), MacDonald, *supra,* sec. 1.40, pp. 8–9.

the jurisdiction of that court to cases involving all of those interests." '

"*Will of Reinke,* at page 404, recognizes the doctrine that:

" '. . . in determining whether or not in a particular case the county court in probate has jurisdiction of certain matters, consideration must always be given to its function, which is "as has been said by this court, to administer and distribute estates and exercise such other powers as may be expressly conferred upon it by the legislature." ' "

Jurisdiction of the probate court is defined and limited by sec. 253.10, Stats.[6]

---

[6] "253.10 *Probate Jurisdiction.* (1) The jurisdiction of the county court extends to the probate of wills and granting letters testamentary and of administration on the estates of all persons deceased who at the time of their decease were domiciled in the county and of all persons deceased who at the time of their decease were not domiciled in this state but who had an estate within the county to be administered or probated, and to any other cases authorized by law; to the appointment of guardians to minors and others in the cases prescribed by law; to all matters relating to the settlement of the estates of such deceased persons and of such minors and others under guardianship; to all cases of constructions of wills admitted to probate in such court; and to all cases of trusts created by will admitted to probate in such court, including administration of trusts created in accordance with s. 701.09; and to hearing objections to the granting of licenses to marry, to ordering the refusal of such licenses and to the granting of stays upon the issuances thereof.

"(2)(a) The county court shall have concurrent jurisdiction to hear, try and determine all matters and controversies which may arise between any personal representative or guardian appointed by such court or trustee under any will admitted to probate in such court and any other person relating to title to or interest in real and personal property so far as such matter or controversy is incidental to and necessary for the complete administration of the estate, guardianship or trust, and regardless of who has possession of the property or in whose name it may be, to the same extent and with like effect as such matters and controversies may be heard, tried and determined in courts of general jurisdiction.

In *Gerlach,* this court concluded sec. 253.10, Stats. did not vest jurisdiction in the probate court:

"The nature of the action should be emphasized. This is an action for damages for an alleged tort. The plaintiffs do not contend that the sale in the probate court was void, and they are not attempting to invoke the equitable power of the probate court to set aside the stock transfer. Rather, they acknowledge the fact of that transfer and are seeking, not a reconveyance, but the damages that resulted from the sale.

". . .

"The present controversy, where the plaintiffs are affirming the sale of the stock and are suing only for negligence and a tortious misrepresentation, is not within the jurisdiction of the probate court as conferred by the statutes." 58 Wis.2d 119–120.

The plaintiffs in the instant action similarly plead causes of action sounding in tort for breach of fiduciary duties and negligence. As in *Gerlach,* they do not seek to set the stock sale aside, but rather claim money damages.[7]

"(b) The county court shall also have concurrent jurisdiction to hear and determine all proceedings involving any trust not subject to the jurisdiction of the county court under sub. (1), including a testamentary trust removed to this state from another state. The jurisdiction of the county court under this paragraph shall not continue beyond the determination of a proceeding, except where a court in another state requires continuing jurisdiction as a condition for permitting removal of a testamentary trust to this state. When a proceeding has been commenced in the circuit court, it may by order transfer the same and the record thereof to the county court for disposition, and the county court may in like manner transfer a proceeding to the circuit court."

[7] Sec. 253.10(2)(a), Stats. does give the probate court jurisdiction to hear controversies "relating to title to or interest in real and personal property." *Gerlach* held that language was inapplicable where the plaintiffs are not contesting the corporation's title to the stock but are only seeking damages for the alleged wrongdoing in connection with the sale. 58 Wis.2d at 121.

Because under the logic of *Gerlach,* the probate court does not have jurisdiction to try this action sounding in tort for breach of fiduciary duties and negligence, one of the prerequisites for raising a bar of res judicata, i.e. competency of the court in the first action to proceed,[8] is missing.

But citation to *Gerlach* cannot end our inquiry. *Gerlach* expressly declined to consider the question whether an executor's discharge in county court constituted a bar to circuit court proceedings because the issue was not raised in the pleadings as an affirmative defense.

Another substantial policy is involved when the county court affirmatively discharges the executor, or here the trustee, of liability. That is the necessity of according probate court orders the weight and finality which are necessary to efficiently put an end to litigation and to allow parties to adjust their affairs with the expectation that the discharge orders have finally settled their respective rights and liabilities. An order discharging a trustee of liability will, of course, mean little if the beneficiary can nevertheless seek to impose financial liability in circuit court at a later date.

But the policy of finality does not apply when the discharge is obtained through the withholding of material facts which a party is under an affirmative duty to disclose.

In *Dick & Reuteman Co. v. Doherty Realty Co.,* 16 Wis. 2d 342, 114 N.W.2d 475, 478 (1962) this court said,

"It is a fundamental principle of the law of trusts that the trustee is under a duty of undivided loyalty to the beneficiaries of the trust. (citations omitted). This duty of loyalty is violated where the trustee purchases an in-

---

[8] *Shaughnessy v. Ohio Casualty Ins. Co., supra.*

terest in the subject matter of the trust." (citations omitted).

The court quoted with approval *Magruder v. Drury*, 235 U.S. 106, 119 (1914):

"It is a well settled rule that a trustee can make no profit out of his trust. The rule in such cases springs from his duty to protect the interests of the estate, and not to permit his personal interest to in any wise conflict with his duty in that respect. The intention is to provide against any possible selfish interest exercising an influence which can interfere with the faithful discharge of the duty which is given in a fiduciary capacity." 114 N.W.2d at 479.

The trustee's duty to protect the interests of the trust beneficiaries does not cease until his discharge is formal and complete. Even during the hearing on discharge the duty to affirmatively represent these interests by disclosing relevant information remains, and the breach of this duty leaves the discharge open to attack.

In *Will of Cosgrove*, 236 Wis. 554, 295 N.W. 784 (1941) the trustee bank invested trust funds in mortgages which, on final account, were not paid off. The bank petitioned for and received settlement of the account by the county court. None of the beneficiaries' heirs appeared at the hearing though they did have notice. It was later discovered that the mortgages ran to the bank in its own name and that the bank assigned the mortgage to the trust without procuring court approval to sell the trust its own securities. The bank's failure to disclose its own interest in the securities was held to be a constructive fraud upon the court and subject to attack.

"But although the inclusion of the two mortgages was improper because of the bank's dealing as trustee with itself, it still follows, as said in connection with the two matters previously discussed, that the inclusion was only

erroneous and remediable only by appeal. It cannot be reached now unless some fraud was practiced upon the court that led to the inclusion.

"We are of opinion that the withholding of the fact of self-dealing from the court constitutes such fraud. 'The trustee in dealing with the beneficiary on the trustee's own account is under a duty to the beneficiary . . . to communicate to him all material facts in connection with the transaction which the trustee knows or should know.' 1 Restatement, Trusts, § (2)." 236 Wis. at 564.

*Also see, Laun v. Kipp,* 155 Wis. 347, 372, 145 N.W. 183 (1914) ; *Will of Petlee,* 266 Wis. 347, 354–355, 63 N.W.2d 715 (1954) ; *In re Estate of Boots,* 73 Wis.2d 207, 243 N.W.2d 225 (1976) ; *In Matter of Estate of Kennedy,* 74 Wis.2d 413, 420, 247 N.W.2d 75 (1976).

Plaintiffs also call to the court's attention the case of *Liberty Title & Trust Co. v. Plews,* 6 N.J. 28, 77 A.2d 219 (1950) which is an accurate summary of the trustee's affirmative duty to make full disclosure. At 77 A.2d 224 it is said,

"We recognize that 'It is a doctrine of universal acceptation that the judgment of a competent court acting within its jurisdiction is conclusive upon parties and privies as to all matters adjudged upon which the parties were of right entitled to be heard' and that this general rule applies to decrees settling accounts . . . . But the courts have recognized exceptions to this rule in cases where there is fraud or mistake, . . . . A trustee, as a fiduciary, is under a duty of make full and complete disclosure of all transactions in relation to his trust. He is permitted neither to conceal nor to misrepresent, and if he fails in his duty to disclose the true facts so as to give notice to interested parties of any illegal or improper investments, it amounts to fraud such as will permit a decree approving his account to be open. 'If the trustee has been guilty of fraud by way of concealment or misrepresentation in presenting his account and procuring the approval of the court, the settlement may be opened.' 4 Bogert, Trusts and Trustees (1935) 2844."

Unlike the aforementioned cases, the present action seeks money damages and does not attempt to reopen the probate settlement. But we extract from these cases the principle that a trustee has an affirmative duty to disclose his interest in the trust res, if such interest exists. Otherwise, the interest of loyalty to the beneficiaries is presumed to be the sole guiding force of a trustee's actions. If, on remand, plaintiffs can establish as part of their case in chief that the trustees had a personal interest apart from their interest as fiduciaries, and that such interest was not known nor should have been known to the plaintiffs, the action in circuit court will not be barred by the probate court orders.

The procedure for examining affidavits and other proof on a motion for summary judgment is well defined.

"Summary judgment is a drastic remedy that should not be granted where material evidentiary facts are in dispute, or, where reasonable inferences can be drawn from undisputed facts that would lead to alternative and opposite results. The summary-judgment procedure initially requires an examination of the pleadings to determine whether a cause of action has been stated and whether material issues of fact are presented. However, the allegations of the pleadings may not be considered as evidence or other proof on a disposition of the motion. Assuming a cause of action and the existence of factual issues, an examination is then made of the moving party's (defendant's) affidavits and other proof to determine whether a prima facie defense has been established. If the moving party has made a prima facie case for summary judgment, an examination is then made of the opposing party's affidavit and other proof to determine whether there exists disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle the opposing party to a trial. The summary judgment procedure is not a trial on affidavits." *Ricchio v. Oberst,* 76 Wis.2d 545, 551, 251 N.W.2d 781 (1977); citing *Marshall v.*

*Miles,* 54 Wis.2d 155, 160–161, 194 N.W.2d 630 (1972). (Citations omitted).

Because the trial court's disposition of this case is based on defendants' affirmative defense of *res judicata,* this court must examine the opposing party's (plaintiffs') affidavit and other proof to determine whether there exists disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle the plaintiffs to a trial. ·

Plaintiffs' affidavit and other proof raise the issues, *inter alia,* whether Kuehnl, while he was trustee, initiated the discussions with ISE to purchase the stock; whether he participated in the ISE internal management committee which formulated the price contained in the offer ultimately made to himself as co-trustee; whether he used due care in arriving at a valuation of the stock which would maximize the trust beneficiaries' position; and whether, at the time these events took place, Kuehnl stood to profit personally by the sale through an ISE employee stock purchase plan. Plaintiffs have similarly raised issues concerning the alleged desire of the co-trustee bank to obtain ISE business and lack of due care in negotiating on behalf of the plaintiffs in the sale of the stock. Plaintiffs have also adequately raised the threshold issue of whether there was a failure on the part of the trustees to affirmatively disclose these alleged facts, constituting a fraud on the court,[9] prior to their discharges.

Defendants' affidavits and other proof, tending to show that the sale was in fact in the best interests of the plaintiffs are defensive in nature and not dispositive on a motion for summary judgment.

*By the Court.*—Judgments reversed and cause remanded for further proceedings not inconsistent with this opinion.

[9] *Will of Cosgrove, supra.*

CONNOR T. HANSEN, J. (*concurring*). I concur with the result reached by the majority in this case. The circuit court granted summary judgment for the defendants on the basis that the action of the plaintiffs was barred on the principles of res judicata by the Racine county probate court's order of March 28, 1966, which discharged and released the defendant Kuehnl of all obligations and liability as co-trustee, and the order of April 1, 1966, which approved the sale of the stock.

The plaintiffs, although they contend otherwise, are clearly bringing a collateral attack against both orders of the probate court. Before any liability in tort may be imposed upon defendant Kuehnl, the plaintiffs must prove that the orders of the probate court discharging and releasing him of all obligations and liability and approving the sale of the stock were procured by a fraud upon the court. If the plaintiffs' assertions of self-dealing and failure to disclose pertinent facts on the part of the co-trustees are subsequently borne out, the orders of the probate court were both necessarily obtained by virtue of a fraud perpetrated upon the probate court.

A judgment or order of a competent court tainted by the perpetration of actual or constructive fraud upon the court in its procurement is open to either direct or collateral attack. *In re Estate of Boots,* 73 Wis.2d 207, 215, 216, 243 N.W.2d 225 (1976); *Sinnott v. Porter,* 57 Wis.2d 462, 466, 204 N.W.2d 449 (1973); *Kriesel v. Kriesel,* 35 Wis.2d 134, 138, 139, 150 N.W.2d 416 (1967); *Zrimsek v. American Automobile Ins. Co.,* 8 Wis.2d 1, 3, 98 N.W.2d 383 (1959); *Estate of Penney,* 225 Wis. 455, 471, 274 N.W. 247 (1937).

While a direct attack should be initiated in the court which entered the initial judgment or order, a collateral attack based upon actual or constructive fraud upon the court may be brought in a different court.[1]

---

[1] *See:* Section 806.07(2), Stats., Rules of Civil Procedure, effective January 1, 1976.

The plaintiffs maintain that they do not wish to disturb the order of the probate court affirming the sale; yet they clearly raise in their affidavit and other proof matters which, if proved at trial, may constitute actual or constructive fraud on the part of the co-trustees in the procurement of the orders. In my opinion, the holding of the majority is not intended to be interpreted as an expression as to the ultimate truth or provability of the factual matters averred to in the affidavit. The factual issues should be left to the determination of the circuit court at trial. It would also seem that the plaintiffs should be given the opportunity to amend their pleadings to reflect an allegation of fraudulent conduct if they so desire.

It is reemphasized that it is incumbent upon the plaintiffs to first prove actual fraudulent practices conducted by the co-trustees in the procurement of the orders of the probate court before the plaintiffs may succeed on their cause of action.

I am authorized to state that Mr. Justice ROBERT W. HANSEN joins in this concurring opinion.