Leon SHAW, Trustee of the Vilas L. Sengstock Family Trust, Plaintiff,

v.

FIRST INTERSTATE BANK OF WISCONSIN, N.A., and First Interstate Trust Company of Wisconsin, Defendants.

No. 88–C–542–S.

United States District Court, W.D. Wisconsin.

Sept. 23, 1988.

Frank J. Bucaida and Timothy D. Fenner of Axley Brynelson, Madison, Wis., for plaintiff.

Henry A. Field of Boardman, Suhr, Curry & Field, Madison, Wis., and Donald K. Schott of Quarles & Brady, Milwaukee, Wis., for defendants.

---

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiff, Leon Shaw, Trustee of the Vilas L. Sengstock Family Trust, brings this action for monetary damages based upon negligence and breach of fiduciary duty alleging inadequate supervision by the defendants, First Interstate Bank of Wisconsin, N.A., and First Interstate Trust Company of Wisconsin, former trustees of the Vilas L. Sengstock Family Trust. The action is currently before the Court on defendants' motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, and for failure to join a necessary party pursuant to Rule 12(b)(7) and 19. Defendants alternatively request this Court to abstain from taking jurisdiction of this matter in order to avoid duplicative proceedings.

On a motion under Rule 12(b)(1) this Court may appropriately consider facts outside the pleadings presented by affidavit. *Pintozzi v. Scott,* 436 F.2d 375, 378 n. 3 (7th Cir.1970). Accordingly, the undisputed facts set forth below were derived from such affidavits as well as from the complaint in this matter.

### FACTS

The plaintiff, Leon Shaw, is the duly qualified and acting trustee of the Vilas L. Sengstock Family Trust, and a resident of Florida. The defendant First Interstate Bank of Wisconsin, N.A., ("First Interstate") is a banking corporation organized under the laws of the United States, engaged in the business of banking in Wisconsin, with its principal offices in Wisconsin. Defendant First Interstate Trust Company of Wisconsin, N.A., (Trust Company) is a corporation organized under the laws of the United States engaged in the business of providing trust services in Wisconsin, with its principal place of business in Wisconsin.

Vilas L. Sengstock died on May 24, 1978, as a resident of Wisconsin. Pursuant to his Will the residue of his estate funded the Vilas L. Sengstock Family Trust. The terms of the Will provided that the Trustee was to hold, manage and reinvest the trust corpus and pay net income to Ruby A. Sengstock during her lifetime and further provided that James and Sally Sengstock were to be remainder beneficiaries.

Under the terms of the Will defendant First Interstate, f/k/a American National Bank & Trust Company of Eau Claire, and Don F. Galloway were named as co-trustees. The Eau Claire County Court, Probate Branch, issued letters of trust accordingly. On December 22, 1978, Don F. Galloway resigned as co-trustee of the trust, his resignation was accepted by the Eau Claire County Circuit Court, and he was discharged by order of that court on January 9, 1979. First Interstate continued to serve as the sole trustee from the date of Galloway's discharge until February 28, 1986.

On February 28, 1986, defendant Trust Company applied to the Wisconsin Commissioner of Banking to be substituted as the fiduciary for all trusts administered by First Interstate. This application was granted and defendant Trust Company has acted as Trustee from February 28, 1986 to June 8, 1988.

At the time of his death, Vilas L. Sengstock owned 238 shares of the common stock of Eau Claire Garot–Christman Agency, Inc., a Wisconsin corporation in the business of procuring insurance. The Estate of Vilas Sengstock agreed to sell these 238 shares for $200,000 in cash and a promissory note in the amount of $1,500,000 secured by the 238 shares of stock. This promissory note was transferred from the Estate to the Trust and became the principal asset in the Trust.

From December 13, 1978 through August 1987 payments were made as required in compliance with the terms of the note. On September 1, 1987, the Garot–Christman Agency ceased making payments on the note and since that time no further payments have been made. The value of the collateral shares in May 1978 was approximately $2 million, and the shares are worthless today.

Under the terms of the stock purchase agreement to which the Trust succeeded, the Trust had the right to assess the books, records and accounts of Garot–Christman Agency. Defendants have never requested such access to the books of the Garot–Christman, nor inquired into its business practices.

In addition to the actions of the Circuit Court for Eau Claire County set forth above, the Court also received the Trustee's inventory and annual accounts for the Trust. The Court ordered a hearing on the accountings of the Trustee on March 30, 1983, and approved the accounts through December 31, 1982 on May 4, 1983.

On February 5, 1988, defendant Trust Company petitioned for an order accepting resignation, appointing successor Trustee, dispensing with appointment of guardian ad litem, approving and allowing accounts, and discharging the Trustee. On March 15, 1988, the Trustee filed its account from December 31, 1987 to March 15, 1988 with the Eau Claire County Circuit Court. On March 16, 1988 the plaintiff filed his acceptance of appointment of successor trustee. On March 21, 1988, the defendant Trust Company and all beneficiaries stipulated to the following: (1) resignation of the Trust Company; (2) appointment of the plaintiff as successor Trustee; (3) dispensing with appointment of guardian ad litem; (4) allowance of the accounts through December 31, 1987, subject to reservation; and (5) release and discharge of the Trust Company subject to reservations of any claims of any parties arising out of the Trust Company's administration of the Trust. On March 25, 1988, Ruby Sengstock Shaw and Sally Sengstock filed a 19–page brief in response to the petition filed by defendant Trust Company. In the brief they object to the discharge of the defendant Trust Company on the grounds that it breached its fiduciary duty in administering the Trust. On March 30, 1988, the Eau Claire County Circuit Court approved the parties' stipulation. On April 12, 1988, the court approved the Trustee's account through May 15, 1988, subject to reservation. On June 8, 1988, the Circuit Court ordered that the Trust Company be re-leased and discharged from all responsibility with respect to the Trust, unless on or before June 30, 1988, the successor Trustee or beneficiaries filed written objections with the Probate Court, subject to reservation. On June 15, 1988, the plaintiff, Ruby Sengstock Shaw, and Sally Sengstock filed objections to the release and discharge of the defendant.

On June 23, 1988 the plaintiff objected to any further proceedings in the Eau Claire Circuit Court. On June 27, 1988, Judge Barland stated that the Eau Claire Circuit Court would "not relinquish any jurisdiction which this Court has relating to the supervision of the Trust, including the discharge of the Trustee...."

On August 29, 1988, a hearing was held in Eau Claire Circuit Court before Judge Thomas Barland concerning the exercise of that Court's jurisdiction over the discharge of the trustees. In that context Judge Barland stated:

> Well, I think I have concluded that this court does have jurisdiction. And whether or not the federal court has jurisdiction, I think is for the federal court to decide because it is for this, it is not for this court to get involved in that issue.... And if the federal court decides that it doesn't have jurisdiction, clearly we would have to go forward with whatever there is left of the issue in this court.

(Transcript of Auust 29, 1988 hearing, at page 2).

The action presently before the Court was commenced on June 15, 1988, and presents issues which are similar to those raised in objection to the discharge of the Trustee before the Eau Claire County Circuit Court.

## MEMORANDUM

The decision in favor of the defendants on their 12(b)(1) motion would necessarily render all other arguments moot. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 512 (5th Cir.1980). This Court therefore considers first whether exclusive jurisdiction of this case lies with the courts of the

State of Wisconsin. To the extent that the jurisdiction of the Court is challenged as a factual matter, the party invoking jurisdiction has the burden of proof. *Grafon Corp. v. Hausermann,* 602 F.2d 781, 783 (7th Cir.1979).

The diversity of citizenship between the parties and the amount in controversy are not disputed by the defendants and are properly alleged in the complaint. The sole issue before the Court under Rule 12(b)(1) is whether under the doctrine set forth in *Princess Lida of Thurn and Taxis v. Thompson,* 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939), the Circuit Court for Eau Claire County, Wisconsin, has exclusive jurisdiction over the present dispute. This Court, having reviewed *Princess Lida,* as well as subsequent cases in this jurisdiction applying *Princess Lida,* finds the facts of this case indistinguishable and therefore finds that it does not have subject matter jurisdiction over the dispute.

In *Princess Lida* a trust beneficiary brought suit against trustees requesting that they be removed, requesting an accounting, and demanding that they restore to the trust funds lost by their negligent conduct. The dispute was simultaneously presented to the probate court in Pennsylvania and to the federal district court in Pennsylvania. The United States Supreme Court held that where a suit involved contentions solely related to "administration and restoration of corpus" and where jurisdiction of the trust had been taken by the state court, such state court had exclusive jurisdiction and a federal court could not acquire subject matter jurisdiction over the dispute.

The doctrine set forth in *Princess Lida* was recently applied and reaffirmed by the Seventh Circuit Court of Appeals in *Norton v. Bridges,* 712 F.2d 1156 (7th Cir. 1983). The court stated:

> The United States Supreme Court distinguished cases like *Princess Lida,* in which the claims related to administration and restoration of corpus, from cases in which a plaintiff seeks merely an adjudication regarding the validity or amount of his claims in a fund. (cita-

tions omitted) The principle illustrated by *Princess Lida* is that "the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other."

*Id.* at 1165 (quoting *Princess Lida,* 305 U.S. 456, 59 S.Ct. 275).

The Court of Appeals went on to analyze the jurisdictional question in two parts. First, whether the claims raised in the complaint were the type relating to the trust corpus as suggested by *Princess Lida,* and second, whether the state court had assumed jurisdiction over the trust.

The principal relief sought in the complaint in the present case is the restoration to the Trust of funds allegedly lost through the negligent conduct of the defendants. This is precisely the relief which was sought in *Princess Lida,* wherein the court stated that jurisdiction did not lie in the federal court where the case involved "restoration of corpus." The fact that this suit is brought by a trustee on behalf of the trust rather than by a beneficiary does not materially affect the nature of the relief sought. Accordingly, the Court must conclude that the relief sought in this case is of the type which *Princess Lida* sought to exclude from jurisdiction. With regard to the second part of the inquiry there is no doubt that the Eau Claire Circuit Court has assumed jurisdiction over this matter and, based upon the ruling of the Court on August 29, 1988, it continues to retain jurisdiction over what is essentially the same controversy as that presented to this Court.

Having concluded by direct application of *Princess Lida* that this Court lacks subject matter jurisdiction, the Court will now address the circuitous arguments of the plaintiff. Plaintiff attacks the application of *Princess Lida* on both of the elements discussed in *Norton,* 712 F.2d 1156. First, it contends that under Wisconsin law the Wisconsin Circuit Court lacks jurisdiction to resolve the present dispute, that the Circuit Court has concluded its proceedings in this matter and no longer retains jurisdiction. This position is inconsistent with the holdings of the Wisconsin Supreme Court, as well as the holding of Judge

Barland in the presently pending state case.

In *Hammes v. First National Bank & Trust Co.*, 79 Wis.2d 355, 255 N.W.2d 555 (1977), the Wisconsin Supreme Court discussed the jurisdictional authority of the Circuit Court concerning the discharge of trustees. At the time this decision was rendered the Wisconsin courts were still divided into probate and general jurisdictions. The Court stated:

> Another substantial policy is involved when the County Court affirmatively discharges the executor, or here, the trustee, of liability. That is the necessity of according probate court orders the weight and finality which are necessary to efficiently put an end to litigation and to allow parties to adjust their affairs with the expectation that the discharge orders have finally settled their respective rights and liabilities. An order discharging a trustee of liability will, of course, mean little if the beneficiary can nevertheless seek to impose financial liability in Circuit Court at a later date.

*Id.* at 367, 255 N.W.2d 555.

Two implications are apparent from this language. First, the Wisconsin Circuit Court, which is presently the court which also hears probate actions, has jurisdiction to hear any suit relating to breach of fiduciary duty. Second, a determination as to the appropriateness of the discharge of the Trustee has a *res judicata* effect on subsequent tort actions brought by beneficiaries or trustees against the allegedly negligent trustees provided that full disclosure is made prior to discharge. The dispute presently before the Court may be resolved in either of those forms and both actions are within the jurisdiction of the Wisconsin Circuit Court.

Concerning the argument that the Wisconsin Circuit Court for Eau Claire County has abandoned jurisdiction of the dispute before it, the subsequent decision of that court on August 29, 1988 resolves any doubt by holding that it in fact retains jurisdiction. Accordingly, there can be little doubt that the Circuit Court for Eau Claire County, Wisconsin, has and retains jurisdiction over the resolution of the dispute presently before this Court.

The plaintiff's second argument, based upon the nature of the claim in this case seeks to distinguish *Princess Lida* from the current case through an elaborate discussion of the distinctions between actions which are *in rem, quasi in rem, and in personam*. The Court finds these phrases to be of little use by themselves in determining whether or not this action should properly be heard by the federal court. The important question is whether this action falls within the term *quasi in rem* as it was used by the U.S. Supreme Court in *Princess Lida*. The plaintiff aptly summarizes the Supreme Court's definition of *quasi in rem* in its brief at page 17.

> Since the plaintiff in the federal court action requested as relief an accounting by the trustee, removal of the trustee, and restoration of trust funds to the trust, the federal court could not grant such relief without control of the trust res. For this reason the federal court action was deemed *quasi in rem.*

There is no question that in this case the plaintiff is seeking restoration of trust funds to the trust. It is true that the removal of trustees and accounting by trustees has already been removed from this action by stipulation in the state court. However, this would not appear to change the reasoning of *Princess Lida* that restoration of trust funds to the trust is sufficiently related to the *res* of a trust to render an action *quasi in rem*.

In support of its argument that the cause of action in this case is not *quasi in rem*, plaintiff cites a series of cases from other jurisdictions which do not involve a request for restoration of funds to the trust. In *Southwestern Bank & Trust Co., etc. v. Metcalf State Bank*, 525 F.2d 140 (10th Cir.1975), bond holders brought an action against a bank which acted as a trustee pursuant to a mortgage indenture to pay them directly for the loss of the value of the bonds. The Trust was not involved and the action did not request restoration of funds to the Trust. Similarly, *Rogers v. Girard Trust Co.*, 159 F.2d 239 (6th Cir.

**1000**

1947) involved a suit by a beneficiary personally against a trustee for payment of funds by the trustee directly to the beneficiary. There was no involvement of the trust in the suit and therefore the court ruled that it was not an action subject to the exclusive jurisdiction of the state court. Finally, in *Martz v. Braun*, 266 F.Supp. 134 (E.D.Pa.1967) the court clearly articulated, in language which was quoted by the plaintiff in its brief, why that case differed from *Princess Lida:*

> We conclude that the federal district court has jurisdiction over the subject matter where the beneficiary of a testamentary trust sues the trustees personally for damages he has suffered as a result of their breach of duty to him. This controversy is far enough removed from direct interference with the trust itself so as to be within our power to adjudicate.

*Id.* at 139. Once again, the crucial distinction is the non-involvement of the trust. None of the cases cited by the plaintiff request the relief of restoration of funds to the trust. The case before the Court involves a suit by the trustee against a former trustee to restore funds to the trust. This relationship whether the action is brought by a beneficiary or a trustee is close enough to the control of the trust to preclude intervention by the federal courts.

Viewing this controversy in a broader sense it is even more apparent that federal jurisdiction is inappropriate. This dispute entails the classic components of a dispute over trust administration: Removal of trustees, appointment of new trustees, accounting and restoration of funds to the trust. The parties have stipulated to resolution of all but the final dispute. Now, prior to decision by the State Circuit Judge on discharge, the plaintiff seeks to splinter off part of the remaining issue and bring it in federal court. Meanwhile, the Wisconsin Court sits by awaiting this Court's decision. The impropriety of federal jurisdiction under such circumstances was aptly summarized by Chief Judge Lewis in his dissent in *Southwest Bank & Trust Co., etc. v. Metcalf State Bank*, 525 F.2d 140, 143 (1975):

I find no compelling reason to strain for federal jurisdiction in this case by the severance of an issue which would be more satisfactorily considered by the state court and is actually there pending in the form of a demand [for discharge of trustees]. There are many controversies potential in the general judicial administration of a trust estate that can with surgical nicety be termed *in personam* but should now be allowed to be splintered off for federal consideration as a vexatious side effect in an essentially *in rem* action.

In this case plaintiffs have attempted to bring such a splinter as an action in this federal court. What makes this case more objectionable than *Southwest Bank & Trust* is that even the splinter which plaintiff attempts to bring here is a *quasi in rem* action as that term was defined in *Princess Lida.*

Having concluded that this Court lacks subject matter jurisdiction, remaining motions become moot and will not be addressed.

### ORDER

IT IS ORDERED that defendants' motion to dismiss this action for lack of federal subject matter jurisdiction pursuant to Rule 12(b)(1) is GRANTED.